[No. 36172. Department Two. May 9, 1963.]

CHARLES W. MOAR, *Appellant*, v. LAWRENCE BEAUDRY *et al.*, *Respondents.*\*

\* Reported in 381 P. (2d) 240.

*Edward P. Reed*, for appellant.

*John F. McCarthy* and *Shirley R. Marsh*, for respondents.

HAMILTON, J.—Plaintiff (appellant) initiated this action to recover the unpaid balance due under a conditional sales contract of a sawmill. The defendants (respondents) defended and counterclaimed upon grounds of breach of express warranty. Plaintiff replied, relying upon waiver and the statute of limitations. The trial court, sitting without a jury, entered judgment dismissing plaintiff's claim and defendants' counterclaim. Plaintiff appeals.

The undisputed facts reveal that: In February, 1955, the parties orally negotiated the sale and purchase of the sawmill in question; snow then prevented inspection of the mill; on April 26, 1955, the parties executed the written contract of conditional sale by which defendants agreed to pay the sum of $10,000 for the mill and its ground lease; payments, under the contract, were to be made, for the first 3 years without interest, by delivery to plaintiff of all lumber processed through the mill, with credit therefor at the rate of $3 per thousand board feet; the mill, in good condition, was capable of producing from 12 to 20 thousand board feet per day; defendants commenced milling operations in May, 1955, and continued during the ensuing annual operational seasons until September, 1957; in 1956, defendants replaced the mill's sawdust burner at a cost of $5,000; defendants received a total lumber credit on the purchase price under the terms of the contract in the amount of $2,399.71; in 1958 and 1959, the sawdust burner and the mill's diesel motor were sold for $1,300 and $500, respectively, which amounts were paid to plaintiff and credited upon the contract; and plaintiff commenced suit in February, 1960, alleging a balance due of $5,800.29, plus interest since April 26, 1958.

Conflict in the testimony and evidence primarily revolves about: (a) Whether plaintiff orally represented the mill to be in "top shape and ready to go"; (b) whether defendants, without inspection of the mill, relied upon such representations in executing the contract; (c) the operational

condition of the mill; (d) whether defendants complained of the mill's condition; (e) whether plaintiff assured defendants an adjustment would be made because of the mill's condition; (f) whether defendants relied upon such assurances; and (g) who obtained buyers for the sawdust burner and motor.

The trial court found, *inter alia*: (1) Plaintiff represented the mill to be in "top shape" and ready to go; (2) defendants, in reliance upon such representation, signed the contract without inspecting the mill; (3) the mill was in such poor condition that its operation was economically unfeasible; (4) in 1956, the sawdust burner was officially condemned, which defendants replaced at a cost of $5,000; (5) defendants timely and on more than one occasion complained to plaintiff about the mill's condition; (6) plaintiff, in response to each complaint, assured defendants an adjustment would be made; (7) as a result of the condition of the mill, defendants incurred loss through expenditures for labor, repairs, and replacements, loss of profits, and diminished value of the mill, finally closing down operations in 1957; (8) in June, 1958, and January, 1959, the plaintiff found buyers and the sawdust burner and diesel motor were sold for $1,300 and $500, respectively, which amounts were paid to plaintiff; and (9) the remaining equipment was valueless.

From such findings, the trial court concluded, in essence: (a) Plaintiff was equitably estopped from asserting any claim for the balance due under the contract, and (b) laches and the statute of limitations foreclosed recovery of damages upon defendants' counterclaim.

Plaintiff presents 11 assignments of error. These, by the tenor of plaintiff's arguments, fall into three categories: (1) Assignments revolving about issues raised by plaintiff's motion for judgment on the pleadings; (2) assignments directed to findings of fact; and (3) assignments challenging applicability of the doctrine of equitable estoppel.

Plaintiff's assignments of error, concerning his motion for judgment on the pleadings, are predicated upon the contention that defendants did not plead estoppel.

■ A review of the record reveals that on the day of trial plaintiff orally interposed a motion for judgment on the pleadings, asserting, as the basis therefor, that defendants' counterclaim premised upon breach of warranty was barred by the statute of limitations. During colloquy and argument upon the motion, plaintiff's counsel[1] stated:

" . . . Well the estoppel and laches are equitable defenses, but I am—I don't feel justified, Your Honor, at this point in presenting this as an argument of law until you had a chance—the estoppel and laches proceedings or proposition, until you had a full opportunity to go into the facts, but I do feel or believe on the face of the pleadings as admitted by the defendants, this thing has gone way past the statute of limitations . . .

" . . .

" . . . We submit too, Your Honor, during the course of the trial the doctrine of estoppel works two ways in this case and we have now been presented with, after almost four years here, the opportunity—well this can work both ways. . . ."

In ruling upon the motion, the trial court stated:

" . . . It may be and probably is a well taken motion in some respects on the statute of limitations. I don't think I should rule on it at this time because the same evidence which would be admissible to prove the cross complaint here would also be admissible probably on the question of whether there is estoppel. I don't think I should rule out that at this time, and the motion will be denied. . . ."

During trial, plaintiff did not object to the introduction of any evidence upon the ground that estoppel had not been pleaded or was not in issue.

A party may not tacitly consent to, invite, and permit, without objection, introduction of evidence upon an issue not raised by the pleadings and thereafter claim error because such issue was not pleaded.

Rule of Pleading, Practice and Procedure 15(b), RCW Vol. 0, provides, in part:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be

---

[1] Counsel on appeal did not represent plaintiff during the trial.

treated in all respects as if they had been raised in the pleadings. . . ."

This rule is to be liberally construed. *Burlingham-Meeker Co. v. Thomas*, 58 Wn. (2d) 79, 360 P. (2d) 1033; 3 Wash. Pract. (Orland) 522, Rule 15; 3 Moore's Fed. Prac. (2d ed.) 843, Rule 15(b).

In passing upon a contention similar to that made by plaintiff we said, in *Krenov v. West Coast Life Ins. Co.*, 48 Wn. (2d) 180, 187, 292 P. (2d) 209:

" . . . Assuming that the facts pleaded were not sufficient to raise the question of estoppel, the evidence adduced at the trial establishes the defense.

"Where evidence is admitted without objection, the pleadings will be treated as amended to conform to the proof, and the court will consider the question of estoppel if there is evidence showing such fact. *Beaulaurier v. Washington State Hop Producers*, 8 Wn. (2d) 79, 111 P. (2d) 559 (1941)."

Plaintiff's assignments of error in this category are without merit.

Plaintiff's second category of assignments of error challenge the trial court's findings of fact upon the issues of plaintiff's representations and assurances, defendants' reliance and complaints, the defective condition of the sawmill, and the detrimental effect of the mill's condition. Plaintiff contends pertinent findings are not supported by the evidence.

Defendant Lawrence Beaudry, in substance, testified that: Plaintiff represented the sawmill to be in "top shape and ready to go"; but for such representation he would not have entered into the transaction; upon discovery of the condition of the mill he, at the first opportunity and repeatedly thereafter, complained to plaintiff about it being a "pile of junk"; plaintiff, on each occasion, assured him an adjustment would be made on the contract; but for such assurance he would not have continued with the mill; a month and a half of labor at $7.50 an hour and an expenditure of $957 for parts was necessary to get the mill in operation; in 1956, official condemnation of the sawdust burner neces-

sitated purchase and installation of a new burner at a cost of $5,000; due to continuous breakdowns, operation of the mill was not economically feasible; following final shutdown of the mill in September, 1957, plaintiff procured buyers and the sawdust burner and diesel motor were sold for $1,300 and $500, respectively, which amounts were paid directly to plaintiff; the mill, inclusive of the diesel motor, was not worth more than $1,000; and after sale of the burner and diesel motor he believed the transaction was concluded.

Defendant R. T. Anderson and other witnesses called by defendants substantiated various aspects of defendant Beaudry's testimony.

Plaintiff's testimony was in substantial conflict with defendants' evidence.

■ The trial court, in evaluating the conflicting versions, stated in his oral decision:

". . . When I look at the whole picture I feel that Mr. Beaudry was making a truthful statement on these things that I mentioned here. I felt that Mr. Moar's statement was not truthful. . . ."

In *Delegan v. White*, 59 Wn. (2d) 510, 512, 368 P. (2d) 682, we stated:

"The trial court's determination, on conflicting evidence, is decisive (assuming the evidence supporting the trial court's finding to be substantial). *Thorndike v. Hesperian Orchards, Inc.* (1959), 54 Wn. (2d) 570, 575, 343 P. (2d) 183. We said in that case that even

" ' . . . If we were of the opinion that the trial court should have resolved the factual dispute the other way, the constitution does not authorize this court to substitute its findings for that of the trial court. . . . ' "

The material findings of fact in the instant case, in our view, are supported by substantial evidence, both direct and circumstantial. We will not disturb them. Plaintiff's assignments of error directed thereto are held for naught.

Plaintiff's third category of assignments of error relate to the trial court's application of the doctrine of equitable estoppel. The main thrust of plaintiff's argument is that defendants, by their conduct in repairing and operating the

mill for three seasons, waived any claim of misrepresentation.

We would have no serious quarrel with plaintiff's argument or the authorities cited in support thereof, if we were considering a claim for damages based upon fraud or breach of warranty. However, the sole question before us is whether, under the circumstances revealed here, the doctrine of equitable estoppel may be applied to the extent of precluding enforcement of plaintiff's contractual rights.

■ The acts and conduct of the parties, as found and relied upon by the trial court, in applying the doctrine of equitable estoppel, were: (a) Plaintiff's initial misrepresentation of the mill's condition; (b) plaintiff's continued assurances that an adjustment in price would be made; (c) defendants' good-faith reliance upon such statements and assurances to their detriment; and (d) plaintiff's participation in, and receipt of benefits from, the sale of integral parts of the sawmill.

In *Strand v. State,* 16 Wn. (2d) 107, 132 P. (2d) 1011; *Carter v. Curlew Creamery Co.,* 16 Wn. (2d) 476, 134 P. (2d) 66; and *Kessinger v. Anderson,* 31 Wn. (2d) 157, 196 P. (2d) 289, we quoted with approval the following definition of equitable estoppel taken from 21 C.J., Estoppel § 116, p. 1113:

"Estoppel by misrepresentation, or equitable estoppel, is defined as the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of contract or of remedy. This estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. It consists in holding for truth a representation acted upon, when the person who made it, or his privies,

seek to deny its truth, and to deprive the party who has acted upon it of the benefit obtained. When a party unjustly contrives to put another in a dilemma and to subject him to necessity and distress and he acts one way, it is not for the wrongdoer to insist that he should have acted another way."

In *Code v. London*, 27 Wn. (2d) 279, 283, 178 P. (2d) 293, we characterized the doctrine in the following language:

"Equitable estoppel is entitled to the distinction of being one of the greatest instrumentalities to promote the ends of justice which the equity of the law affords. . . ."

We cautioned, however, in *Stouffer-Bowman, Inc. v. Webber*, 18 Wn. (2d) 416, 428, 139 P. (2d) 717, that:

"Estoppels must be certain to every intent, and are not to be taken as sustained by mere argument or doubtful inference. . . ."

In the *Code* and *Kessinger* cases, we laid down the following rule:

"To constitute estoppel *in pais*, three things must occur: (1) An admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act." *Kessinger v. Anderson*, 31 Wn. (2d) 157, 170, 196 P. (2d) 289.

Measured by such requirements, it can be said, within the framework of the evidence and the trial court's findings of fact, that: (a) Plaintiff by misrepresentation induced defendants to undertake the purchase of a defective sawmill worth substantially less than the contract price, and by subsequent misleading assurances lulled them into continuing with the contract; (b) in reliance upon plaintiff's assurances, defendants forsook other remedies, expended labor, incurred substantial expense, and suffered a loss of profits in a fruitless effort to rehabilitate the sawmill and produce enough lumber to comply with the contract, finally participating with plaintiff in a sale of the valuable portions of the mill in a good-faith attempt to satisfy the con-

tract; and (c) if plaintiff were permitted to repudiate his assurances of an adjustment on the contract and to insist that defendants waived any reliance upon his behavior, then defendants would be required to pay a substantial sum for the remaining valueless mill equipment. In short, plaintiff would be unduly rewarded for his shrewdness and defendants unduly penalized for their credulity.

Under these circumstance, we cannot say the trial court erred in invoking the doctrine of equitable estoppel.

The judgment is affirmed.

OTT, C. J., DONWORTH, FINLEY, and HUNTER, JJ., concur.

June 28, 1963. Petition for rehearing denied.