[No. 26377-3-I.   Division One.   April 20, 1992.]

TIMOTHY J. GESCHWIND, SR., *Appellant*, v. MICHAEL FLANAGAN, ET AL, *Defendants*, JANE SEYMOUR, *as Personal Representative, Respondent.*

---

[10]RCW 51.24.060.

208

*K.R. St. Clair; William H. Nielsen* and *McIntosh, Lewis, Evans & Nielsen; Lawrence L. Shafer* and *Shafer, Moen & Bryan, P.S.,* for appellant.

*Hal Thurston* and *Simonarson, Visser, Zender & Thurston,* for respondent.

BAKER, J. — Timothy J. Geschwind, Sr., appeals from a judgment on a verdict denying him recovery for injuries sustained in an automobile accident. He contends the tort reform act should not have applied to this case, and that the trial court erred in: (1) submitting the issue of his contributory negligence to the jury; (2) refusing to rule as a matter of law that he could not be found more than 50 percent at fault; and (3) refusing to instruct the jury that certain material exhibited during respondent's closing argument was not in evidence.

Respondent Jane Seymour, as personal representative of the estate of Timothy J. Flanagan, Jr., deceased, cross-appeals, alleging the trial court erred in refusing to dismiss the action for failure of Geschwind to serve a creditor's claim against her predecessor within the statute of limitations.

## FACTS

In October 1984 appellant and Timothy Flanagan went drinking at a number of establishments, after which Flanagan drove his vehicle into a 1-car accident. Flanagan was killed and appellant suffered serious injuries. Appellant, the passenger, was asleep at the time of the crash. Decedent's blood alcohol level was .38 and appellant's was .17.

Appellant filed suit 2 days before the effective date of the tort reform act, Laws of 1986, ch. 305. Decedent's brother, Michael Flanagan, was named a defendant in his individual capacity, but not as personal representative of the estate. The unknown personal representative of the estate was also named. In fact, no personal representative had been appointed.

A year later appellant's new counsel discovered that no personal representative had been appointed. He obtained defense counsel's agreement to the appointment of Michael Flanagan and to his addition as a party defendant in a

representative capacity. A first amended complaint was then filed naming Michael Flanagan as personal representative of the estate; however, Michael Flanagan did not immediately post a bond and did not receive his letters of administration until March 30, 1989. Appellant filed a creditor's claim against the estate the next day. In February 1990 attorney Jane Seymour, respondent herein, was substituted as personal representative of the estate.

The trial court made several pretrial rulings at issue in this appeal. First, the court refused to dismiss the action for failure to serve a creditor's claim on the personal representative within the 3-year statute of limitations. Second, the court ruled that the amended complaint adding Michael Flanagan in a representative capacity did not relate back to the date the original complaint was filed; thus, the tort reform act applied to the case. Finally, the court refused to rule as a matter of law that appellant could not be found more than 50 percent at fault in causing his damages.

Over appellant's objections, the court submitted the issue of contributory negligence to the jury. The jury found appellant 70 percent contributorily negligent. He was denied recovery under a provision of the tort reform act that bars recovery to an intoxicated party who is more than 50 percent at fault. RCW 5.40.060. The court denied appellant's motion for a judgment notwithstanding the verdict or new trial, and this appeal followed. Respondent cross-appealed on the issue of whether a creditor's claim had been timely filed.

### RELATION BACK OF AMENDED COMPLAINT

Appellant argued below that his amended complaint related back to the original complaint by virtue of CR 15, so that the tort reform act did not apply to the case. The trial court ruled against appellant on this point and appellant has expressly abandoned the CR 15 argument in his brief on appeal. Instead, he relies on CR 9(a) and CR 17(a) to establish relation back.

■ As a general rule, an appellate court will not consider arguments raised for the first time on appeal. *See Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983); RAP 2.5(a). However, because a new trial is required for other reasons, we address the merits of appellant's argument to provide guidance to the trial court on remand.

CR 9(a)[1] provides that a party desiring to raise an issue as to the authority of a party to be sued in a representative capacity shall do so by specific negative averment with supporting particulars. Appellant claims this rule applies, and since no specific negative averment was made, any challenge to Michael Flanagan's capacity to be sued has been waived.

■ Appellant is mistaken in his premise that CR 9(a) applies to the facts of this case. Neither respondent nor her predecessor ever challenged the capacity of Michael Flanagan to be sued as personal representative of the estate. In fact, Flanagan stipulated to his own appointment as personal representative and to the amendment of the complaint adding him as a party defendant in that capacity. Respondent's argument that the amendment does not relate back to the original filing date does not "raise an issue as to . . . the authority of a party to . . . be sued in a representative capacity", and therefore CR 9(a) does not apply.

■ Likewise, CR 17(a), concerning identification of real parties in interest, is inapplicable.[2] That rule relates to the

---

[1]CR 9(a) provides:

"**Capacity.** It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party. When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment which shall include such supporting particulars as are peculiarly within the pleader's knowledge."

[2]CR 17(a) provides:

"**Real Party in Interest.** Every action shall be *prosecuted* in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for

identification of plaintiffs, not defendants. 3A L. Orland, Wash. Prac., *Real Party in Interest* § 5201, at 323 (3d ed. 1980). The text of the rule refers to the prosecution, commencement and bringing of actions, making it clear that it applies only to plaintiffs. The purpose of the rule is "simply to protect the *defendant* against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." (Italics ours.) *Rinke v. Johns-Manville Corp.*, 47 Wn. App. 222, 227, 734 P.2d 533 (quoting Fed. R. Civ. P. 17(a) advisory committee note, 39 F.R.D. 85 (1966)), *review denied*, 108 Wn.2d 1026 (1987).

Since neither of the rules cited by appellant would allow the relation back of the amended complaint to the filing date of the original complaint, we conclude, as did the trial court, that the tort reform act applies to this case.

### SUBMISSION OF CONTRIBUTORY NEGLIGENCE ISSUE TO JURY

Appellant next contends there was insufficient evidence to submit the issue of his contributory negligence to the jury. This contention is completely without merit. Appellant testified that he watched Flanagan consume alcoholic beverages at each of five locations over the course of 6 hours. The drinks included several very strong mixed drinks. Appellant testified that upon leaving the last of the locations, Flanagan bumped the cars in front and behind him, causing appellant to ask if he (appellant) could take over driving. Appellant admitted on cross examination that he knew it was unsafe to ride with Flanagan.

A toxicologist testified that at Flanagan's blood alcohol level of .38, most people would be unconscious and the

---

the benefit of another, or a party authorized by statute may *sue* in his own name without joining with him the party for whose benefit the action is *brought*. No action shall be dismissed on the ground that it is not *prosecuted* in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of *commencement* of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been *commenced* in the name of the real party in interest." (Italics ours.)

remainder would be obviously drunk, regardless of individual tolerance levels.

We find there was sufficient evidence to submit the issue of appellant's contributory negligence to the jury, and the trial court did not err in doing so. The numerous cases cited by appellant are factually distinguishable.

### Fifty Percent Contributory Negligence Bar

RCW 5.40.060,[3] part of the tort reform act, bars a litigant from recovering damages for an injury if: (1) he or she was under the influence of alcohol or any drug at the time of the occurrence causing the injury; (2) such condition was a proximate cause of the injury; and (3) the trier of fact finds that he or she was more than 50 percent at fault.

Appellant argues that it is logically and legally impossible for a passenger who does not interfere with the driving of a vehicle to be more than 50 percent at fault in causing an accident. He argues that RCW 5.40.060 was intended to bar recovery by a driver or pedestrian whose intoxication was the main cause of an accident or injury, and was not intended to bar recovery by a passive passenger. Respondent counters that the issue is not whether the passenger was liable for causing the accident, but whether he was liable for causing his own injuries. This question presents an issue of first impression.

Under the facts of this case we find appellant's argument persuasive. Respondent's attempted distinction between causation of the "injuries" and causation of the "accident" fails here, because all of appellant's injuries resulted from a single accident.[4]

---

[3]RCW 5.40.060 provides, in pertinent part:

"It is a complete defense to an action for damages for personal injury or wrongful death that the person injured or killed was under the influence of intoxicating liquor or any drug at the time of the occurrence causing the injury or death and that such condition was a proximate cause of the injury or death and the trier of fact finds such person to have been more than fifty percent at fault."

[4]Such would not be the case if, for instance, appellant had walked away from the accident and then staggered into oncoming traffic due to his own intoxication, receiving further injuries.

Respondent's attempted distinction appears to be a statement of "but for" causation in another guise: but for appellant's negligence in riding with an intoxicated driver he would have suffered no injuries, so that in one sense he is 100 percent responsible for his injuries. However, "but for" causation merely establishes that appellant's negligence was *a cause in fact* of his damages; it does not establish the percentage of fault attributable to it, *as compared with other causes.*

We must not lose sight of the fact that the negligence of the parties here must be *compared,* and that the resulting allocation of fault cannot exceed 100 percent. While the jury apparently found appellant highly culpable, it should not have been permitted to find him more culpable than the intoxicated driver who had the primary responsibility for reasonably safe operation of the vehicle.

The parties agreed at oral argument that if the trial court's decision on this issue were reversed, a new trial would be required on liability as well as damages. We concur in the parties' assessment. Arguably, the jury's allocation of 70 percent fault to appellant could be reduced to 50 percent, pursuant to our decision herein, and a new trial could proceed solely on the issue of damages. However, we are reluctant to assume that under a proper instruction limiting appellant's fault to no more than 50 percent, the jury would have chosen the 50 percent figure. The case must therefore be remanded for a new trial on liability as well as damages.

### SERVICE OF CREDITOR'S CLAIM

Respondent contends in her cross appeal that the trial court should have dismissed appellant's suit for failure to serve a creditor's claim against the personal representative of the estate within the 3-year statute of limitations. Timely submission of a creditor's claim is a prerequisite to maintaining an action against an estate. RCW 11.40.080. The time period for filing a claim against an estate when a liability or casualty insurance policy is available to pay the

claim is the same as the statute of limitations. RCW 11.40-.011.[5]

The accident giving rise to appellant's injuries occurred on October 27, 1984. On September 10, 1987, Michael Flanagan was appointed as personal representative, but he did not immediately file a bond and therefore did not receive letters of administration until March 30, 1989. The creditor's claim was served against the estate on March 31, 1989 — 1½ years after the 3-year statute of limitations expired on October 27, 1987.

■ The trial court refused to dismiss the action. It ruled that pursuant to RCW 11.40.090,[6] the period for submission of a creditor's claim was tolled during the "vacancy in the administration" created by the personal representative's lack of letters of administration. The vacancy existed for the 18-month period from September 10, 1987 (when the personal representative was appointed), until March 30, 1989 (when letters of administration were issued). Thus, the creditor's claim served on March 31, 1989, was timely, as it was served within 18 months of October 27, 1987, when the statute of limitations otherwise would have expired.

Although there are no cases on point interpreting RCW 11.40.090, the trial court's reasoning is sound:

> The Court is mindful of the defendants' argument that the statute of limitations applicable here cannot be extended by

---

[5] Former RCW 11.40.011, in effect at the time appellant filed his creditor's claim and at the time the motion for summary judgment was heard, provided in pertinent part:

"The four-month time limitation for serving and filing of claims shall not accrue to the benefit of any liability or casualty insurer as to claims against the deceased and/or the marital community of which the deceased was a member and such claims, subject to applicable statutes of limitation, may at any time be:

"(1) Served on the personal representative, or the attorney for the estate; . . .

". . . .

". . . Nothing in this section serves to extend the applicable statute of limitations regardless of the appointment or failure to have appointed a personal representative for an estate."

[6] RCW 11.40.090 provides:

"The time during which there shall be a vacancy in the administration shall not be included in any limitations herein prescribed."

virtue of the last sentence of RCW 11.40.011 . . . However, that sentence merely provides that nothing "in this section" serves to extend the applicable statute of limitations. The section referred to is, of course, RCW 11.40.011. RCW 11.40.090 is a separate section of chapter 11.40. Thus, if there has been a vacancy in the administration of the estate contemplated by RCW 11.40.090, the limitations period (here, three years) is extended accordingly.

At the outset, it should be noted that RCW 11.40.090 provides that the time during which there shall be a vacancy *in the administration* shall not be included in the applicable limitations period. This section does not refer to a vacancy in the office or position of personal representative, but rather a vacancy in the administration.

Authority to administer an estate is conferred by means of letters testamentary or letters of administration. (See chapter 11.28 RCW.) A personal representative has no legal authority to *administer* an estate absent the issuance of such letters. The Court concludes, therefore, that the phrase "vacancy in the administration" refers to any period of time after the formal opening of an estate during which the personal representative does not hold letters testamentary or letters of administration, as the case may be.

Letter opinion, at 6 (May 9, 1989).

The trial court also based its ruling on the fact that the personal representative had failed to comply with his mandatory duty to give notice to creditors. RCW 11.40.010.[7] Due process under the federal constitution requires actual notice

---

[7]Former RCW 11.40.010, in effect at the time Michael Flanagan was appointed personal representative and at the time the motion for summary judgment was heard, provided in pertinent part:

Every personal representative shall, immediately after his appointment, *cause to be published in a legal newspaper published in the county in which* the estate is being administered, a notice that he has been appointed and has qualified as such personal representative, and therewith a notice to the creditors of the deceased, requiring all persons having claims against the deceased to serve the same on the personal representative or his attorney of record, and file an executed copy thereof with the clerk of the court, within four months after the date of the first publication of such notice or within four months after the date of the filing of the copy of said notice to creditors with the clerk of the court, whichever is the later.

This statute was subsequently amended to require actual notice to creditors who become known to the personal representative within the 4-month time limitation. RCW 11.40.010(1).

to known or reasonably ascertainable creditors of an estate, in addition to publication of the notice to creditors in a legal newspaper. *Tulsa Professional Collection Servs., Inc. v. Pope*, 485 U.S. 478, 99 L. Ed. 2d 565, 108 S. Ct. 1340 (1988). The trial court correctly reasoned that appellant's action could not be barred for failure to file a creditor's claim where the personal representative had failed to qualify himself so as to be in a position to notify creditors to file such claims.[8] The court stated:

> In this context, the appropriateness of RCW 11.40.090 becomes evident. During the period in which a personal representative has been appointed but has failed to qualify and receive letters of administration, any applicable statute of limitations is tolled. When the personal representative has qualified as such and been issued letters of administration, and is thereby in a position to give notice to creditors, the period of limitation recommences. (It is important to note that [former] RCW 11.40.010 provides that the personal representative is to publish notice to creditors *immediately* after his appointment and qualification.)

Letter opinion, at 7 (May 9, 1989).

We agree with the trial court and find no error in refusing to dismiss appellant's action for failure to serve a creditor's claim within the statute of limitations.

The cause is reversed and remanded for a new trial.

WEBSTER, A.C.J., and KENNEDY, J., concur.

Review granted at 119 Wn.2d 1017 (1992).

---

[8]A petition for discretionary review to this court, filed by respondent's predecessor, was denied based on the same reasoning.