IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CHARLES and BAMBI COMPTON, | ) | |
| | ) | No. 34488-6-III |
| Respondents, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LEWIS CLARK SADDLE CLUB, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — The Lewis Clark Saddle Club appeals the trial court's rejection

of its claims that the club's neighbors, the Comptons, trespassed on club property,

harassed club members, and should have to pay treble damages and the club's attorney

fees. The club also appeals the trial court's conclusion that the Comptons acquired title

by adverse possession to approximately a foot of land on the west edge of property to

which the club holds title.

In answering the Saddle Club's trespass claim, the Comptons defended on the

basis that they had acquired title to the allegedly trespassed property by adverse

possession. The trial court enjoyed discretion under CR 8(c) to treat the defense as a

counterclaim, and did, although the Comptons' failure to present a legal description of

the adversely-possessed property leaves them with a judgment that establishes their title

somewhat imprecisely. The trial court's findings support its conclusions and judgment

on the adverse possession issue as far as it goes, however, and support its conclusions and

judgment on other matters the club challenges on appeal. We affirm.

FACTS AND PROCEDURAL BACKGROUND

Charles and Bambi Compton's Clarkston home, which they have owned since

2008, sits immediately west and slightly uphill of property owned by the Lewis Clark

Saddle Club. The Saddle Club, a nonprofit corporation, began operating horse riding

facilities for club members around 1963. At times relevant to this lawsuit, its facilities

included a main arena and a warm-up, or practice arena. The practice arena is located on

the west end of the Saddle Club property, next to the Comptons' home. A chain link

fence that runs north and south was treated for many years as the boundary line between

the Compton and Saddle Club properties.

Around 2009 the Comptons, complaining that dust drift from club activities had

increased, asked the club to put dust control measures into place. The Saddle Club

updated its sprinkler system, installing larger, automatic sprinklers to wet down its arena.

Unfortunately, water from the sprinklers would hit the Compton home and the area

between the home and fence, causing erosion. According to the Comptons, the erosion

has turned what had been a mere crack in their driveway into a one foot exposure of the driveway's underside.

In 2012 the Comptons asked the Saddle Club's groundskeeper if the club would object if the Comptons installed a retaining wall on their property along the fence line to prevent further erosion. After consulting Saddle Club members, the groundskeeper told the Comptons they could do whatever they wanted on their side of the chain link fence. The Comptons proceeded to construct a short retaining wall by stacking two non-treated 2 x 12 planks next to the fence. They claim to have later received permission to install a taller privacy fence which they supported by attaching it to the chain link fence and fence posts. The club disputes having granted permission for the privacy fence and contends the Comptons' retaining wall and privacy fence have pressed against the chain link fence in places, causing it to lean in toward the practice arena.

The Comptons continued to voice their complaints to club officers and members, a number of whom testified that Mr. Compton in particular was angry, aggressive and intimidating in episodes in which he yelled at club members about the dust. In the spring of 2014, the Comptons purchased surveillance cameras. According to the Comptons, it was to document the ongoing dust and sprinkler drift onto their property; club members found the ongoing surveillance to be objectionable, particularly given the number of children that used the practice arena. Police were called on more than one occasion by club members or the Comptons.

3

The parties' grievances ultimately found expression in the action below. The Comptons started it, asserting claims for nuisance, negligent property damage, and trespass. The Saddle Club responded, asserting counterclaims for trespass, waste, harassment, surveillance, and stalking. The club's trespass claim was based on a survey it caused to be performed after the lawsuit was filed, which revealed that based on record title the true property boundary was not the chain link fence but was between 10 and 16 inches to the west, on property the Comptons used to construct their retaining wall. In resisting the club's trespass counterclaim, the Comptons defended in part by claiming that they and their predecessors had acquired title by adverse possession to any club property that lay west of the chain link fence.

The dispute proceeded to a bench trial. On the issue of whether the Comptons had trespassed on Saddle Club property or only on property that the Comptons owned by adverse possession, Ms. Compton testified that when she and her husband bought the property, the chain link fence was in place and was treated by them as the boundary line. A former owner of the Comptons' property testified that the chain link fence was there when she bought the property in 1993. One of the club's members also testified that the chain link fence had been there for at least 25 years. The club's groundskeeper testified that he always thought the fence line was the property line.

Following the conclusion of the bench trial, the court issued a memorandum opinion in which it rejected every one of the parties' affirmatively-stated claims for relief.

4

But in rejecting the Saddle Club's trespass claim, it found that the chain link fence had been in place for well over 10 years and the Comptons' use of the strip of land on its west side had been "open and notorious, actual and uninterrupted, exclusive and hostile for well over the statutory period." Clerk's Papers (CP) at 177. It concluded "the property in dispute to the west of the chain link fence is owned by Plaintiffs as a result of adverse possession." CP at 176.

The Saddle Club moved for reconsideration of the adverse possession finding. The trial court allowed oral argument. At the conclusion of the argument, the court denied the club's motion, identifying three grounds: it stated that adverse possession had been sufficiently pleaded as a defense to trespass, that the Comptons' claim to ownership had been tried by express or implied consent of the parties, and that in construing the pleadings to do substantial justice the court found the claim to have been sufficiently presented.

The Saddle Club appeals.

## ANALYSIS

The Saddle Club's assignments of error consist of a dozen parts and subparts, which we group into three issues on appeal. First, they challenge, on both procedural and substantive grounds, the trial court's determination that the Comptons own the land to which the Saddle Club holds record title that lies west of the chain link fence. This includes a challenge to the court's failure to include a legal description of the boundary in

5

its findings, conclusions, and judgment. Second, they challenge the trial court's failure to

enter anti-harassment protection orders in favor of individual nonparty members of the

Saddle Club who the court found "may have a basis to seek anti-harassment orders

individually." CP at 178. Third and finally, they challenge the trial court's denial of

their trespass and malicious trespass claims, including their request for an award of

attorney fees and treble damages under chapter 4.24 RCW.

We address the assigned errors in the order stated.

ADVERSE POSSESSION

Characterizing the trial court as having acted sua sponte in concluding the

Comptons had established title to the one-foot strip of property west of the chain link

fence, the Saddle Club argues that (1) the court's action strayed from the civil rules and

deprived the Saddle Club of due process by resolving an issue without notice and an

opportunity to defend, (2) the evidence was insufficient to establish hostile use for the

required statutory period of 10 years, and (3) adverse possession should not have been

found to land that is not legally described.

*Civil rule compliance and due process*

We begin with the single finding and single conclusion that the trial court made

with respect to the adverse possession issue. Its finding 1.16 states:

> Plaintiffs have treated the strip of land west of the above referenced fence
> as their own for more than 10 years, and this use has been open, notorious,

6

actual, uninterrupted, exclusive and hostile for well over the statutory
period.

CP at 216.  It concluded:

The Plaintiffs own the Adversely Possessed Property described in section
1.16 of the Findings of Fact as a result of adverse possession.

CP at 217.  The Comptons' proposed findings of fact had included a purported legal

description of the disputed strip of land, but their lawyer admitted when challenged that

her clients had not paid for a survey so she had "work-shopped [the description] a little"

based on testimony at trial, coming up with "the best we could do."  Report of

Proceedings (RP) at 541.  The court agreed with the Saddle Club's lawyer that any legal

description needed to be provided by a licensed surveyor and struck the "work-shopped"

legal description.

The Saddle Club argues that the Comptons' response to their counterclaims did

not put them on notice of an action for ejection or to quiet title because it made no

mention of chapter 7.28 RCW, did not pray for affirmative relief, and was never raised by

a motion to amend.

Washington is a notice pleading state, with a liberal notice pleading regime

intended to assist in the "'full airing of claims having a legal basis.'"  *State v. LG Elecs.,

Inc.*, 186 Wn.2d 169, 183, 375 P.3d 1035 (2016), *cert. denied sub nom. Koninklijke

Phillips N.V. v. Washington*, ___ U.S. ___, 137 S. Ct. 648, 196 L. Ed. 2d 522 (2017)

(quoting *Berge v. Gorton*, 88 Wn.2d 756, 759, 567 P.2d 187 (1977)).  CR 8(c) provides,

"When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." And CR 15(b) provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Tacit consent, reflected by a failure to object to introduction of evidence, is enough. *Moar v. Beaudry*, 62 Wn.2d 98, 101, 381 P.2d 240 (1963). The rule is to be liberally construed. *Id.* at 102. Pleadings are to be interpreted to do substantial justice. We review the trial court's application of the civil rules for an abuse of discretion. *Sprague v. Sysco Corp.*, 97 Wn. App. 169, 171, 982 P.2d 1202 (1999); *Morgan Bros. v. Haskell Corp.*, 24 Wn. App. 773, 780-81, 604 P.2d 1294 (1979) (review of trial court's application of CR 15(b)).

The Comptons' response to the Saddle Club's trespass counterclaim clearly put the Saddle Club on notice that adverse possession was being asserted by way of defense or avoidance, and would be an issue at trial. In response to the Saddle Club's allegation that the fence was east of the true property line by a foot, the Comptons responded:

> Plaintiffs . . . deny paragraph 3.9 to the extent that they believe that their possession of the property, when tacked onto the possession of previous owners of the strip of land in question, meets all the elements of adverse possession. Therefore, they assert that they are owners of the property.

CP at 63. Similarly, in response to the club's allegation that the fence and the retaining wall the Compton's had constructed with the groundskeeper's permission were on Saddle Club property, they responded:

> Plaintiffs deny paragraph 3.20 to the extent that they, and, through tacking, their predecessors in interest, meet the requirements for adverse possession.

CP at 65.

Because the Comptons' pleadings put the Saddle Club on notice of the issue, the club was not denied due process. The trial court was authorized by the civil rules to treat the defense as a counterclaim without requiring a motion to amend and did not abuse its discretion in doing so.

*Evidence sufficiency*

The Saddle Club argues that until the Comptons constructed the retaining wall, there had been no hostile use of the portion of the Saddle Club's property west of the chain link fence, and the retaining wall had been in existence for far less than the 10 years of hostile use required to establish adverse possession.

Adverse possession is a mixed question of law and fact. *Chaplin v. Sanders*, 100 Wn.2d 853, 863, 676 P.2d 431 (1984). In a bench trial, the court determines whether the requisite facts exist as the trier of fact, but determines whether those facts constitute adverse possession as an issue of law. *Id.* The trial court's determination that there had been hostile use by the Comptons and their predecessors for at least 10 years was a

finding of fact that we review for substantial evidence, viewing all evidence and inferences in the light most favorable to the prevailing party. *Lewis v. Dep't of Licensing*, 157 Wn.2d 446, 468, 139 P.3d 1078 (2006).

The hostility element of an adverse possession claim "'does not import enmity or ill-will.'" *Chaplin*, 100 Wn.2d at 857 (quoting *King v. Bassindale*, 127 Wash. 189, 192, 220 P. 777 (1923)). It "requires only that the claimant treat the land as his own as against the world throughout the statutory period." *Id.* at 860-61. "Where a fence purports to be a line fence, rather than a random one, and when it is effective in excluding an abutting owner from the unused part of a tract otherwise generally in use, it constitutes *prima facie* evidence of hostile possession up to the fence." *Wood v. Nelson*, 57 Wn.2d 539, 541, 358 P.2d 312 (1961). The Saddle Club admits that the mere existence of a line fence can establish hostile use, but contends there was no testimony that the chain link fence was a line fence rather than a random fence.

The Saddle Club's own evidence supports a finding that the chain link fence was a line fence. The club's president testified that the club had its surveyor mark a line 5 feet east of the west boundary of its property, from which he measured how far the chain link fence strayed from the west boundary. He identified photographs taken of measurements he made from over a dozen fence posts. About half of the photographs showed that the fence line was located between 12 and 14 inches east of the boundary line. A few measurements showed that the fence line was off by as much as 15 and 16 inches, and the

10

measurement from the northernmost post indicated that the fence line was off by only 10 inches at that point. Given the age of the fence and the undisputed evidence that it was damaged and leaning in places, these are minor discrepancies. The measurements support the trial court's implicit finding of a line fence parallel to the property boundary, not a random fence. Evidence that it was a line fence and had been in place for decades was sufficient, particularly absent any evidence that the Saddle Club ever used the strip of land or questioned whether the fence line was the boundary line before obtaining its July 2014 survey.

### *Absence of a legal description*

Finally, the Saddle Club assigns error to the fact that the trial court found adverse possession without having been presented with a proper legal description. The law favors more precision; RCW 4.64.030(2)(b) requires a judgment that "award[s] title . . . [to] real property" to include a recordable description of the property. Nonetheless, title by adverse possession has been decided without determining the legal description of the subject property. *Daubner v. Mills*, 61 Wn. App. 678, 681, 811 P.2d 981 (1991), for example, describes litigation taking place 10 years earlier in which the defendant, Ms. Mills, successfully defended against a trespass claim by asserting adverse possession to a neighbor's property on which she had encroached by building a rock wall and later a fence. She obtained a judgment finding the wall and fence to be the boundary between the properties. The judgment stated that she "'may have a survey conducted to obtain an

accurate legal description of said strip of real property for purposes of recording her title thereto.'" *Id*. Three years later, she obtained an ex parte order that modified the judgment to include a legal description. *Id.*

It was probably shortsighted for the Comptons to fail to procure and present a legal description in the action below, since they now lack recordable title to the strip of land the trial court awarded them. Surely it will cost more to obtain a recordable title through future litigation than it would have cost to have a survey performed for purposes of the judgment entered in this lawsuit—especially if the Saddle Club removes the chain link fence, which the trial court's findings describe as "old and leaning."[1] CP at 216. But the Comptons' failure to prove enough to obtain recordable title does not deprive them of the benefit of what they *did* prove.

HARASSMENT CLAIM

Among the Saddle Club's counterclaims was its claim that the Comptons had "repeatedly and continually harassed and interfered with the Saddle Club and it[s] members, and their quiet enjoyment in a manner causing them . . . fear for the health and

---

[1] The record reveals that the concrete in which the fence posts were placed is now located below ground level, so if the Saddle Club removes the fence, it could choose to cut off the posts, leaving the stub that remains as evidence of the old fence line. If it chooses not to do so, the club might want to give the Comptons advance notice of any planned removal so that it cannot be faulted if the Comptons fail to arrange for a survey while the fence is still in place.

12

safety of themselves and its members." CP at 31. It prayed for a permanent anti-harassment order.

> RCW 10.14.020(2) defines "unlawful harassment" as
>
> a knowing and willful course of conduct *directed at a specific person* which seriously alarms, annoys, harasses, or is detrimental to such person, and which serves no legitimate or lawful purpose. The course of conduct shall be such as would cause a reasonable person to suffer substantial emotional distress, and shall actually cause substantial emotional distress to the petitioner, or, when the course of conduct would cause a reasonable parent to fear for the well-being of their child.

(Emphasis added.) In its memorandum decision, the trial court concluded that the Saddle Club "is not a 'specific person.'" CP at 178. It added that "certain members of Defendant Saddle Club may have a basis to seek anti-harassment orders individually." *Id.* The court also found that the Comptons had a legitimate purpose in engaging in some of the conduct the Saddle Club complained about. *Id.*

One basis on which the Saddle Club moved for reconsideration was to argue that the court should have applied CR 15(b), amending the pleadings to conform to the evidence of harassment allegedly suffered by specific club officers or members. The court denied the motion.

CR 15(b) authorizes the trial court to treat *issues* not raised by the pleadings that are tried by express of implied consent "of the parties" as if they had been raised in the pleadings. It does not authorize the court to add or substitute parties. Adding or substituting parties is dealt with by civil rules 17 through 25. CR 17(a) is a more relevant

13

rule but it was never raised in the trial court. It cannot be raised for the first time on appeal. RAP 2.5(a); *Barker v. Mora*, 52 Wn. App. 825, 828, 764 P.2d 1014 (1988); *Geschwind v. Flanagan*, 65 Wn. App. 207, 211, 828 P.2d 603 (1992), *rev'd in part on other grounds*, 121 Wn.2d 833, 854 P.2d 1061 (1993).

TRESPASS AND DAMAGES

The trial court made the following findings of fact related to the Saddle Club's trespass counterclaim:

> 2.7　　The Plaintiffs own the Adversely Possessed Property described in section 1.16 of the Findings of Fact as a result of adverse possession.
>
> 2.8　　Defendant's claim for trespass on the land west of the chain link fence must be dismissed because Plaintiffs cannot trespass on their own land.
>
> 2.9　　Defendant's claim for damage to their chain link fence is denied because the fence was already old and damaged.

CP at 217-18. The Saddle Club's brief does not contain a separate assignment of error for any of the findings with reference to the finding by number, as required by RAP 10.3(g), so these findings are verities on appeal. *Draszt v. Naccarato*, 146 Wn. App. 536, 541, 192 P.3d 921 (2008). A less strict approach is applied if the claimed error is clearly disclosed in the associated issues. *Schlegel v. Dep't of Licensing*, 137 Wn. App. 364, 372 n.2, 153 P.3d 244 (2007) (Schultheis, J., dissenting).

The Saddle Club argues that the evidence supported its position that the retaining wall constructed by the Comptons pushed over and permanently damaged the club's

14

chain link fence. It points out that its witnesses estimated the cost of repairing the fence at $15,000. Strictly enforcing the rules on appeal, this argument fails in light of the trial court's unchallenged finding that the fence was already old and damaged. Even under the less strict approach, the trial court's determination is reviewed (as explained earlier) for substantial evidence, viewing all evidence and inferences in the light most favorable to the prevailing party. The Comptons presented testimony that their construction of the retaining wall did not further damage an already old and failing fence.

The Saddle Club also argues, for the first time on appeal, that the Comptons' attachment of their privacy fence to the chain link fence was a clearly demonstrated trespass for which they should be awarded at least nominal damages. Br. of Appellant at 33 (citing *Keesling v. City of Seattle*, 52 Wn.2d 247, 253, 324 P.2d 806 (1958)). The Saddle Club's counterclaim for trespass alleged actual and substantial damages, and the written closing argument it filed with the court also requested an award of actual substantial damages. The word "nominal" is not to be found anywhere in the clerk's papers or in the report of proceedings. RAP 2.5(a) states the general rule for appellate disposition of issues not raised in the trial court: appellate courts will not entertain them. *State v. Guzman Nunez*, 160 Wn. App. 150, 157, 248 P.3d 103 (2011) (citing *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988)), *aff'd*, 174 Wn.2d 707, 285 P.3d 21 (2012). We will not entertain a claim of entitlement to nominal damages that is raised for the first time on appeal.

15

Because we affirm the trial court's findings and conclusions dismissing the club's trespass claims, we need not consider its argument under RCW 4.24.630 for an award of treble damages and attorney fees incurred in the trial court. For the same reason, we deny its request for an award of attorney fees on appeal.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Fearing, J.

_____
Pennell, A.C.J.