[No. 59300-1.   En Banc.   July 15, 1993.]

TIMOTHY J. GESCHWIND, SR., *Respondent*, v. MICHAEL FLANAGAN, ET AL, *Defendants*, JANE SEYMOUR, *as Personal Representative, Petitioner.*

*Simonarson, Visser, Zender & Thurston* and *Hal Thurston,* for petitioner.

*Lewis, Evens & Nielsen,* by *Wm. H. Nielsen, K.R. St. Clair,* and *Lawrence L. Shafer; Maltman, Weber, Reed, North & Ahrens, Douglass A. North* and *Douglas W. Ahrens,* for respondent.

*Timothy R. Gosselin* on behalf of Washington Defense Trial Lawyers, amicus curiae for petitioner.

*Gary N. Bloom, Bryan P. Harnetiaux,* and *Mary Beth Nethercutt* on behalf of Washington State Trial Lawyers Association, amicus curiae for respondent.

DURHAM, J. — On the evening of Friday, October 26, 1984, Timothy Geschwind was a passenger in a truck driven by Timothy Flanagan. At approximately 12:55 a.m. on the morning of October 27, Flanagan drove his truck off the road, killing himself and injuring Geschwind. Both men were significantly intoxicated. In a subsequent action brought by Geschwind to recover damages for his injuries, a jury found him to be 70 percent at fault for his own injuries. Pursuant to RCW 5.40.060, which prohibits recovery by an intoxicated plaintiff if the intoxication was a proximate cause of the injuries and the plaintiff is more than 50 percent at fault, Geschwind was denied recovery, and the defendant was awarded judgment. We are asked to answer two distinct questions: (1) can a negligent passenger ever be more at fault for his or her injuries than a negligent driver? and (2) does RCW 5.40.060 prohibit recovery to an intoxicated passenger when the intoxication was a proximate cause of his or her injuries, and the passenger is found to be more than 50 percent at fault for those injuries? We answer both questions in the affirmative.

The facts of this case follow a pattern which, despite the best efforts of the citizens, courts and Legislature of this state, remains all too commonplace. On the evening in question, Geschwind and Flanagan planned to "go out and party, and . . . get a little buzzed." Report of Proceedings (RP) vol. 5, at 15. With Flanagan driving, they drank a number of beers while on Whidbey Island, and then caught the 8:30 p.m. ferry to Everett. After arriving in Everett, they stopped in one tavern where they had another beer or two, then continued on to a bar, where Geschwind had at least two potent mixed drinks. They ended their drinking at a third bar, where Geschwind recalled having a beer and a shot. Although Geschwind was not monitoring Flanagan's alcohol intake, he believed that Flanagan was drinking about the same amount.

While pulling out of his parking space at the last bar, Flanagan bumped the cars in front of him and behind him. Geschwind then asked his friend if he (Geschwind) should drive, but Flanagan declined the offer. Geschwind believed Flanagan's driving was passable once Flanagan was on the main road, and Geschwind dozed off in the passenger seat. Subsequently, Flanagan drove off the road and crashed into a telephone pole. Flanagan's blood alcohol content (BAC) at the time of the accident was .38; Geschwind's BAC was .17.[1]

At trial, Geschwind admitted that both of them planned to "get buzzed." RP vol. 5, at 14-15. Geschwind defined being "buzzed" as any point before being falling-down drunk. He also testified that he considered it safe to drive with "somebody who's got a buzz on, so long as they're not falling down drunk[.]" RP vol. 5, at 16. Geschwind admitted that although he thought that Flanagan was "over-buzzed", he voluntarily chose to stay in the truck rather than get out in an area that he did not know.

The trial judge instructed the jury on the issue of contributory negligence as follows:

> If you find that the plaintiff was the passenger and that he voluntarily rode in the truck after he knew, or in the exercise of ordinary care should have known, the driver's condition, and if you also find that a person using ordinary care would not have ridden in the truck, and if you further find that the driver's condition was a proximate cause of plaintiff's injury or damages, you will find plaintiff contributorily negligent.

Defendant's Clerk's Papers (DCP), at 22. The jury was also instructed as to the effect of RCW 5.40.060, which prohibits recovery if the plaintiff was intoxicated, the intoxication was a proximate cause of the injuries, and the plaintiff was more than 50 percent at fault. The jury returned an answer in a special verdict form[2] which attributed 70 percent of the fault

---

[1] A person is guilty of driving under the influence of alcohol if he or she has a BAC of .10 or greater. RCW 46.61.502.

[2] The interrogatory read as follows:

"QUESTION NO. 5: Assume that 100% represents the total combined fault which proximately caused the plaintiff's injury or damage. What percentage of

for his injuries to Geschwind himself. The jury also found that Geschwind's intoxication was a proximate cause of his injury. Pursuant to RCW 5.40.060, judgment was entered for the defendant.

On appeal, the Court of Appeals reversed and remanded for a new trial. Accepting Geschwind's argument that a passenger cannot legally be responsible for more than 50 percent of his or her injuries, the court stated that "[w]hile the jury apparently found appellant highly culpable, it should not have been permitted to find him more culpable than the intoxicated driver who had the primary responsibility for reasonably safe operation of the vehicle." *Geschwind v. Flanagan*, 65 Wn. App. 207, 214, 828 P.2d 603 (1992). This court accepted the petition for review.[3]

Generally, the issue of contributory negligence is one for the jury. *Young v. Caravan Corp.*, 99 Wn.2d 655, 661, 663 P.2d 834, 672 P.2d 1267 (1983). The jury found Geschwind 70 percent at fault for his own injuries. The Court of Appeals reversed on the theory that a passenger can never, as a matter of law, be liable for more than 50 percent of his or her injuries. This raises an issue of first impression.

In 1981, Washington adopted contributory fault as a method of apportioning damages as between a negligent plaintiff and a negligent defendant. Laws of 1981, ch. 27, § 8, p. 117, codified at RCW 4.22.005. "Fault" is defined as including "unreasonable assumption of risk, and unreasonable failure to avoid an injury . . . ."[4] RCW 4.22.015. The determination of the percen-

---

this 100% is attributable to the plaintiff's negligence and what percentage of this 100% is attributable to negligence of Timothy Flanagan? (Your total must equal 100%.)

| "ANSWER | | PERCENTAGE |
|---|---|---|
| "Plaintiff Geschwind | | 70 % |
| "Timothy Flanagan | | 30 % |
| | "TOTAL | 100 % " |

Supplemental Clerk's Papers, at 34.

[3]Petitioner Jane Seymour is the personal representative of the estate of Timothy Flanagan.

[4]Inasmuch as "assumption of the risk" analysis might apply to this situation, Geschwind's voluntary decision to encounter the risk of riding with an intoxicated

tage of total fault attributable to each party, "including the claimant or person suffering personal injury", is specifically reserved for the trier of fact. Former RCW 4.22.070.

The courts of this state have long held that a passenger may be found to be contributorily negligent by voluntarily riding in a car with a driver who he or she knows, or reasonably should know, is intoxicated. *Traverso v. Pupo*, 51 Wn.2d 149, 152-53, 316 P.2d 462 (1957); *Morse v. Frank*, 1 Wn. App. 871, 873, 466 P.2d 166 (1970). *See also* WPI 12.01.01 (can find plaintiff contributorily negligent if driver intoxicated, plaintiff knew, or should have known, of driver's condition, person of ordinary care would not have ridden in car, and driver's condition is a proximate cause of plaintiff's injury). Prior to the adoption of the comparative fault statute, a plaintiff's contributory negligence acted as a complete bar to recovery, regardless of the percentage of fault. *E.g.*, *Morse*, at 873.

The Court of Appeals concluded that there could be no distinction between causation of the "injuries" and causation of the "accident", because "all of appellant's injuries resulted from a single accident." *Geschwind*, at 213. This reasoning misunderstands the nature of contributory negligence. "A plaintiff's negligence relates to a failure to use due care *for his own protection* whereas a defendant's negligence relates to a failure to use due care *for the safety of others*." *Seattle-First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wn.2d 230, 238, 588 P.2d 1308 (1978). *Accord Taylor v. Taug*, 17 Wn.2d 533, 540, 136 P.2d 176 (1943); *Murray v. Amrine*, 28 Wn. App. 650, 656, 626 P.2d 24 (1981). *See also* W. Page Keeton et al., *Prosser and Keeton on Torts* § 65, at 451 (5th ed. 1984) ("Contributory negligence is conduct on the part of the plaintiff, contributing as a legal cause to the harm he has suffered, which falls below the standard to which he is required to conform for his own protection.").

---

driver brings his actions under the doctrine of "unreasonable assumption of the risk" which has been held to "retain no independent significance from contributory negligence after the adoption of comparative negligence." *Scott v. Pacific West Mt. Resort*, 119 Wn.2d 484, 497, 834 P.2d 6 (1992).

We recognize that it may seem inconsistent to allow a passenger to be held more at fault for his or her injuries than a negligent driver. However, when a person has voluntarily engaged in behavior which increases the risk of injury, he or she may be held to be predominantly liable for the injuries occurring as a result thereof. *Shorter v. Drury*, 103 Wn.2d 645, 695 P.2d 116, *cert. denied*, 474 U.S. 827 (1985) provides an illustration of this principle. In *Shorter*, a woman and her husband, both Jehovah's Witnesses, signed a release absolving a doctor from responsibility for any untoward results due to the wife's refusal to accept blood transfusions for religious reasons. The doctor negligently performed the operation and the wife bled to death as a result of both her injuries and her refusal to accept a transfusion. On a jury verdict for the plaintiff husband, the jury reduced the plaintiff's wrongful death damages by 75 percent based on the husband's and wife's assumption of the risk. *Shorter*, at 647. This court upheld that verdict. *Shorter*, at 659. Although that case involved express assumption of the risk, which is not subsumed by contributory negligence, *Shorter*, at 656, the principle that a plaintiff who did not directly "cause" the accident may still be held more liable for his or her injuries than the accident-causing tortfeasor is clearly illustrated.

The argument that a passenger cannot be more than 50 percent at fault also violates the express language of the comparative fault statute. "In all actions involving fault of more than one entity, the trier of fact *shall* determine the percentage of the total fault which is attributable to every entity which caused the claimant's damages, *including the claimant* or person suffering personal injury or incurring property damage, defendants, [and all other entities]." (Italics ours.) Former RCW 4.22.070. There was no error assigned to the jury instructions, and the jury properly determined the percentages of fault to be assigned to each party in this action.

Moreover, a limitation on the percentage of fault attributable to a passenger would similarly violate article 1, section 21 of our constitution which states that "[t]he right

of trial by jury shall remain inviolate . . .." The right to a jury trial may not be impaired by either legislative or judicial action. *Brandon v. Webb*, 23 Wn.2d 155, 159, 160 P.2d 529 (1945). In *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 771 P.2d 711, 780 P.2d 260 (1989), we struck down a statutory limit on the recovery of non-economic damages as violative of this constitutional right since it operated to "tak[e] a jury's finding of fact and alter[] it to conform to a predetermined formula." *Sofie*, at 653. An arbitrary limitation on a passenger's comparative fault would accomplish the same result. Therefore, we reverse the Court of Appeals, and reinstate the jury's determination of fault.

We must next decide whether RCW 5.40.060 was properly applied in this case. That statute reads, in relevant part:

> It is a complete defense to an action for damages for personal injury or wrongful death that the person injured or killed was under the influence of intoxicating liquor or any drug at the time of the occurrence causing the injury or death and that such condition was a proximate cause of the injury or death and the trier of fact finds such person to have been more than fifty percent at fault.

RCW 5.40.060. As a matter of law, Geschwind was found to be under the influence at the time of the accident. *See* RCW 5.40.060; RCW 46.61.502. It is uncontested that his intoxication was found to be a proximate cause of his injuries, and that he was found to be more than 50 percent at fault. Thus, on its face, the statute would appear to bar recovery.

■ Nonetheless, respondent, as well as amicus curiae Washington State Trial Lawyers Association (WSTLA), argue that the Legislature could not have meant this statute to apply to an intoxicated, but passive, passenger. They argue that there is uncertainty as to the legislative intent which raises the possibility of ambiguity. However, respondent and WSTLA have failed to demonstrate any actual ambiguity in the statute. Rather, their arguments attempt to bypass this threshold inquiry and address instead their fundamental disagreement with the substance of the statute. Without a showing of ambiguity, though, we derive the statute's meaning from its language alone. *Everett Concrete Prods., Inc. v. Department of*

*Labor & Indus.*, 109 Wn.2d 819, 822, 748 P.2d 1112, 7 A.L.R.5th 1086 (1988). In interpreting a statute, the court should assume that the Legislature meant exactly what it said. *King Cy. v. Taxpayers of King Cy.*, 104 Wn.2d 1, 5, 700 P.2d 1143 (1985). We are obliged to give the plain language of a statute its full effect, even when its results may seem unduly harsh. *State v. Pike*, 118 Wn.2d 585, 591, 826 P.2d 152 (1992).

Our review of the statute leads us to conclude that it is clear and unambiguous and, applied to the case at hand, acts to deny any recovery to this plaintiff. Since it is unambiguous, it is unnecessary to examine legislative history in order to interpret the statute. Similarly, there is no need to inquire into common-law tort standards, since it is the Legislature's prerogative to change or define tort law for this state.

Even if we were convinced that the statute is ambiguous, our review of the legislative history shows that the Legislature was aware of the potential effect of the statute. Throughout its drafting, the Legislature referred specifically to "causation of the injury", not "causation of the occurrence leading to injury". Senate Journal, 49th Legislature (1986), at 471, 475-76; Senate Journal, 50th Legislature (1987), at 635. Moreover, although the original language of the bill in the Senate only spoke in terms of "negligence per se", the bill was amended in the House to clarify that the effect of the statute was to bar recovery altogether. *Compare* Senate Journal, 49th Legislature (1986), at 475 *with* House Journal, 49th Legislature (1986), at 1052. Although RCW 5.40.060 might be interpreted as conflicting with RCW 4.22.005, which states that contributory fault "does not bar recovery", the Legislature is free to create exceptions to statutes, as well as common law. *Cf. Morris v. Blaker*, 118 Wn.2d 133, 147, 821 P.2d 482 (1992) ("A conflict between two statutory provisions can be resolved by giving effect to the more specific and more recently enacted statute . . ..").

The application of RCW 5.40.060 to passengers is in accord with a number of secondary sources, as well. The comment to

WPI 12.01.01[5] states that RCW 5.40.060 "may bar the recovery of a passenger plaintiff who was also intoxicated at the time of the accident." WPI 12.01.01 comment. The *Washington Motor Vehicle Accident Deskbook* is in agreement with this commentary.

> [I]t is now a *complete* defense to a personal injury or wrongful death action that the person injured or killed was under the influence of alcohol or drugs at the time of the occurrence causing the injury or death if the condition contributed more than 50% to the claimant's injuries. . . .
> The new rule may apply to a variety of typical fact patterns. . . . Likewise, a passenger's own intoxication may preclude liability. A passenger's own intoxication is admissible to prove contributory fault. The rationale for this rule is that intoxication diminishes a passenger's appreciation of danger and renders the passenger more likely to take greater risks than usual.

(Citations omitted.) Washington State Bar Ass'n, *Washington Motor Vehicle Accident Deskbook* § 12.2(5) (1988). We find that the statute is clear and unambiguous and was properly applied by the trial court in this case.

Lastly, respondent Geschwind contends that there was insufficient evidence to submit the issue of the plaintiff's contributory negligence to the jury. This claim was also raised below at the Court of Appeals, where that court found the claim to be "completely without merit". *Geschwind*, at 212. We agree with that court's analysis. There was more than enough evidence for an instruction on contributory negligence and the instruction was properly given.

In sum, we reverse the Court of Appeals' decision to remand for a new trial and order that the jury verdict be reinstated. We find that RCW 5.40.060 properly applies to this case and acts as a bar to the respondent's recovery. The Court of Appeals is affirmed on the sufficiency of the evidence issue.

ANDERSEN, C.J., and BRACHTENBACH, GUY, and MADSEN, JJ., concur.

---

[5]The pattern jury instructions found at WPI 12.01.01 are the same in all essentials as the actual instruction on contributory negligence given by the trial judge in this case.

JOHNSON, J. (dissenting) — I dissent. Today the majority applies RCW 5.40.060 to bar a tort victim from *any* recovery for injuries he suffered as a result of an intoxicated driver's negligence. In effect, the majority allows a drunk driver to avoid paying for the consequences of his tortious actions. The Legislature never intended such a result. In this case, Geschwind was a sleeping passenger in a truck driven by Flanagan, who was driving while intoxicated. Flanagan crashed the truck into a telephone pole, causing Geschwind's injuries. While Geschwind was also intoxicated as he slept in the truck, his intoxication did not cause the truck to collide with the pole. The Legislature did not intend RCW 5.40.060 to bar a passive tort victim, such as Geschwind, from any recovery where the victim's intoxication did not cause the tortious event. The majority's overly expansive reading of RCW 5.40.060 immunizes tortfeasors from the consequences of their tortious conduct, contrary to the legislative intent behind the statute. Such a result is manifestly unfair and flies in the face of the Legislature's goal of compensating victims injured through the tortious conduct of others.

This court's fundamental objective in interpreting RCW 5.40.060 must be to ascertain and give effect to the intent of the Legislature. *See Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 293, 840 P.2d 860 (1992); *Rozner v. Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991). The court looks for legislative intent as it is expressed in the language of the statute. *Washburn*, 120 Wn.2d at 293. "Where statutory language is plain and unambiguous, the statute's meaning must be derived from the wording of the statute itself". *Bellevue Fire Fighters Local 1604 v. Bellevue*, 100 Wn.2d 748, 750, 675 P.2d 592 (1984), *cert. denied*, 471 U.S. 1015, 85 L. Ed. 2d 299, 105 S. Ct. 2017 (1985). However, where legislative intent does not clearly appear on the face of the statutory language, the court may resort to various tools of statutory construction, including consideration of the statute's legislative history, to determine the Legislature's intent. *Rozner*, 116 Wn.2d at 347.

The majority contends the Legislature's intent can be surmised from the language of the statute, rendering any review of legislative history unnecessary. I disagree. The statute is inartfully worded and ambiguous on the issue of proximate cause. Inartfully drawn terminology is not plain and unambiguous, and is subject to the rules of statutory construction. *See, e.g., Bellevue Fire Fighters,* 100 Wn.2d at 751. The purpose of an enactment should prevail over express but inept wording. *State v. Burke,* 92 Wn.2d 474, 478, 598 P.2d 395 (1979). Therefore, a court may ignore inartfully drafted wording that undermines legislative intent.

The Legislature itself realized the original version of the statute was poorly worded on the issue of causation. *See* Senate Journal, 50th Legislature (1987), at 635. Within only 1 year of its passage, the Legislature reworded the statute to clarify "the *relationship* between the *intoxication* of a plaintiff and the *occurrence* which *results* in the plaintiff's injury". (Italics mine.) Final Legislative Report, 50th Legislature (1987), SSB 6048, at 307; *see* Laws of 1987, ch. 212, § 1001. The majority's reading of the statute, however, does not draw any relationship between the plaintiff's intoxication and the occurrence causing the plaintiff's injuries. The fact the majority does not see any relationship where the Legislature states that one was intended demonstrates the ambiguity inherent in the wording of the statute.

Despite the 1987 revision, the statute remains ambiguous on the issue of proximate cause. "Proximate cause" is a legal term of art, which in and of itself can be ambiguous. "There is perhaps nothing in the entire field of law which has called forth more disagreement, or upon which the opinions are in such a welter of confusion". W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 41, at 263 (5th ed. 1984). RCW 5.40.060 is ambiguous in its use of the term "proximate cause" because it fails to adequately set out the causal relationship between the plaintiff's intoxicated condition and the tortious event itself which causes the plaintiff's injuries. The original 1986 version did not even include the terms "causing" and "proximate cause". *See* Laws of 1986, ch.

305, § 902. In 1987, the Legislature added these terms in two phrases relating to causation: the plaintiff must be intoxicated "at the time of the *occurrence causing the injury or death*", and the *intoxicated condition* must be a "*proximate cause* of the injury or death". (Italics mine.) Laws of 1987, ch. 212, § 1001. Given the Legislature stated the revisions were intended to clarify the *relationship* between the plaintiff's intoxication and the occurrence causing the injury, the Legislature appears to have intended these two phrases to be cross referential. In other words, by including both phrases, the Legislature seems to have intended the plaintiff's intoxication to be the proximate cause of *both* the occurrence and the injury. However, the statute is ambiguous on whether that is in fact the case.

Moreover, the statute provides that the occurrence be the cause of the injury or death, but does not indicate *who* must cause the occurrence. An "occurrence" does not simply happen on its own, short of being an act of God. Who is the actor who causes the occurrence which causes the injury? Must it be the plaintiff or will some other actor suffice? This distinction is critical for determining when the statute applies, but again, the statute is ambiguous on this issue.

Even if the statute were not ambiguous, however, the majority's expansive reading of the statute's language will lead to absurd results. "[S]tatutes should be construed to effect their purpose, and strained, unlikely, or absurd consequences resulting from a literal reading are to be avoided". *State v. Neher*, 112 Wn.2d 347, 351, 771 P.2d 330 (1989). In *Neher*, this court interpreted the vehicular assault statute to mean a defendant's action can be one of two or more proximate causes of a victim's injury, even though the plain and unambiguous language of the statute provides the defendant's conduct must be "*the proximate* cause" rather than "*a* proximate cause". (Some italics mine.) *Neher*, 112 Wn.2d at 351. Otherwise, *any* contributory conduct by a victim or third party that is a proximate cause of the injury would relieve the defendant of criminal culpability. *Neher*, 112 Wn.2d at 351.

Like *Neher*, the majority's literal reading of RCW 5.40-.060 leads to absurd results. First, a driver who crashes a vehicle while intoxicated and injures or kills a passenger is potentially guilty of vehicular assault, a class C felony, or vehicular homicide, a class B felony. *See* RCW 46.61.522; RCW 46.61.520. Nevertheless, under the majority's broad reading of RCW 5.40.060, such a driver could be absolved of any civil liability for compensatory damages to the passenger. Allowing a drunk driver who may be criminally culpable to simultaneously walk away from compensating his victim is not only absurd but grossly unfair.

Second, the majority's interpretation would also lead to absurd results by barring certain claims while allowing others. Suppose, for example, two plaintiffs were hit by a drunk driver, and both were found 51 percent contributorily negligent. Assume the first plaintiff was not intoxicated but was partially at fault for stepping off the curb into the street, where he was hit. Because he was not intoxicated, RCW 5.40.060 would not apply, and he could recover for the driver's percentage of the damages. However, suppose the second plaintiff did not step off the curb, but was simply standing on the curb intoxicated, when hit by the driver. That plaintiff could be barred from recovering any damages under the majority's interpretation of RCW 5.40.060. Such inconsistent results are absurd and could not have been intended by the Legislature.

Given that the language of RCW 5.40.060 is inartfully worded, is ambiguous, and potentially leads to absurd results, this court should resort to consideration of the statute's history to determine legislative intent. *Rozner*, 116 Wn.2d at 347. The majority contends its review of the statute's legislative history shows the Legislature was aware of the statute's potential effect because it referred to "causation of the injury" and not "causation of the occurrence leading to injury" in drafting the statute. Majority, at 841. The majority is correct that legislative drafts of the statute refer to "causation of the injury". *See* Senate Journal, 49th Legislature (1986), at 471 (first draft

barring actions which are "a proximate cause of his or her injury"). Nonetheless, the majority's conclusory statement completely begs the question of what the legislators meant by drafting this statute and ignores legislative floor discussions which shed considerable light on the question. Throughout the proceedings, the legislators' explanations demonstrate they intended the statute to reach only those individuals whose tortious conduct caused the underlying accident or occurrence.

For example, when the first proposal for RCW 5.40.060 was introduced in the Senate, Senator Goltz explained the meaning of the statute as follows:

> This says that a person who is intoxicated or under the influence of drugs *who is the cause of an accident* shall have no cause to bring a case for that injury.

(Italics mine.) Senate Journal, 49th Legislature (1986), at 471. Senator Bottiger agreed with Senator Goltz's intent, but noted their difficulty in figuring out how to draft the necessary language to carry out their intent:

> My problem is, I can't figure out how to write it. Now, what we are after here is the guy *whose conduct and his intoxication is the cause of his accident*, but the problem is, you can have many proximate causes of the accident. So, if someone is barely over the intoxication figure and that is one of the reasons for the accident, you have barred him against all other defendants including somebody who might be at a 2.0 that ran into him and killed him.

(Italics mine.) Senate Journal, 49th Legislature (1986), at 471. Because the legislators had difficulty in wording the statute, they continually referred to concrete examples to demonstrate the type of person whom the statute was intended to target. For example, Senator Goltz stated:

> There is a case now in the city of Bellingham where a person was intoxicated to a level that is higher than is specified here or in other parts of the law, who ran off a road and is now suing the city for sixteen million dollars, because the city failed to put up a guard rail. I regard that kind of thing as something that we ought to take action against. *This [statute] does not affect a person who is intoxicated standing on a street and run down by someone else. Since they are not the cause of that accident, that person would probably have the right to*

*recover. This has to do with cause at the time of the intoxica-tion.* I urge the adoption of the amendment.

(Italics and underscore mine.) Senate Journal, 49th Legislature (1986), at 471. It is manifest in this and similar examples that the Legislature intended the statute to apply only to intoxicated persons causing the underlying accident, and not to intoxicated but passive victims.

In 1987, the Legislature revised RCW 5.40.060 based, in part, on a recommendation by the Tort Reform Committee that the statute failed to properly address the issue of causation:

> The Committee concluded that this statute fails to include the concept of proximate cause in the analysis of the claims which might be made by an intoxicated person. Proximate cause should be considered, in order to avoid situations where there is a legally insufficient nexus between the intoxicated condition and the injury. . . . *The Committee also felt it appropriate to tie the issue of proximate cause to the event causing injury rather than to the injury itself.*

(Italics mine.) Tort Reform Committee, *Report to the Insurance Commissioner of the State of Washington on the 1986 Tort Reform Act* 70 (1987). In response, the Legislature added two phrases to address the Committee's concerns and to draw a relationship between the intoxication and the occurrence resulting in the plaintiff's injury: (1) the person injured or killed must be intoxicated "at the time of the occurrence *causing* the injury or death"; and (2) such condition must be "a *proximate cause* of the injury or death".[6] (Italics mine.) RCW 5.40.060. Again, the floor discussion sheds additional light on the Legislature's intent in adding these two phrases:

---

[6] In amending RCW 5.40.060 in 1987, the Legislature did not adopt the Tort Reform Committee's exact proposed language stating that the intoxicated condition must be "more than fifty percent of the proximate cause of the occurrence which results in his or her injuries or death". Tort Reform Committee, *Report, supra* at 71. The fact that the Legislature did not adopt this particular language does not necessarily mean the Legislature did not intend to tie the intoxicated condition to the occurrence. Rather, the Legislature may not have adopted the Committee's precise language because of confusion over the meaning of the term "proximate cause". Senator Talmadge stated:

> You might recall in the debate on this issue that we placed the fifty percent provision in the area relating to proximate cause. Some of us argued out here

Senator Metcalf: "Okay, in other words, we are not changing the wording about complete defense, we are just changing and adding, 'at the time of the *occurrence causing* the injury or death.' You know as a non-lawyer, I don't really understand why we're saying, and maybe I'm wrong, why we are saying, 'if you are intoxicated, you have some sort of a defense for what you did.' . . ."

Senator Talmadge: "Senator, you've got the wrong person. A complete defense is what's available to the defendant who is being sued by the drunk. So, if you were someone who went to a tavern, for example, and consumed a dozen beers and went out on the highway and *because of your intoxication, ran into someone else* and you then sued someone else, the person who was sued would be entitled to raise the defense and say, 'You can't recover, because you were drunk.' "

Senator Metcalf: "Okay. Thank you very much. That answers my question."

(Italics mine.) Senate Journal, 50th Legislature (1987), at 635.

Thus, despite the Legislature's difficulty in grappling with the term "proximate cause" and the statute's ambiguity on causation, the Legislature's focus throughout the history of RCW 5.40.060 was on intoxicated persons *causing* the underlying tortious accident or event, resulting in injury. Throughout subsequent revisions of the statute, this underlying legislative intent does not appear to have changed. The legislative history of the statute makes apparent the Legislature intended RCW 5.40.060 to apply to those individuals whose intoxicated condition proximately caused *the tortious event itself*, but did not intend the statute to apply to passive, intoxicated victims who were contributorily negligent but did not cause the underlying accident.

This interpretation is also consistent with the historical distinction between negligence and contributory negligence. Only negligence involves tortious conduct:

---

on the floor that proximate cause can't be anything less than zero or one-hundred percent. It's either or.

Senate Journal, 50th Legislature (1987), at 635. *See also* Senate Journal, 49th Legislature (1986), at 476 (striking term "proximate" because 50 percent and "proximate" are contradictory). At a minimum, the floor discussions confirm the Legislature had difficulty in determining how to incorporate causation into the wording of the statute.

A plaintiff's negligence relates to a failure to use due care *for his own protection* whereas a defendant's negligence relates to a failure to use due care *for the safety of others*. While a plaintiff's self-directed negligence may justify reducing his recovery in proportion to his degree of *fault*, the fact remains that such conduct, unlike that of a negligent defendant, is not tortious.

*Seattle-First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wn.2d 230, 238, 588 P.2d 1308 (1978).

Passive passengers may be contributorily negligent to the extent they failed to use due care for their own protection by riding with an intoxicated driver. But for their action of riding in the vehicle, they would not have been injured. However, passive passengers have *not* taken any action to proximately cause the *occurrence* which results in injury. Thus, there is a distinction between intoxicated drivers who "actively" cause an occurrence which injures themselves or others, and "passive" passengers who are partly responsible for their injuries by getting into the vehicle, but do not cause the vehicle to crash. *See Delmore v. American Family Mut. Ins. Co.*, 118 Wis. 2d 510, 521 n.4, 348 N.W.2d 151 (1984) (noting active negligence by the passenger, such as grabbing the steering wheel, "must be distinguished from passive negligence, such as accompanying an intoxicated or incompetent driver"). The passive passenger is more like the Legislature's hypothetical intoxicated person walking down the sidewalk who is hit by a drunk driver. The Legislature intended that type of victim to still be able to recover for the tortious conduct of the drunk driver.[7]

---

[7]Petitioner argues this interpretation would conflict with the court's previous statement regarding RCW 5.40.060 in *Hansen v. Friend*, 118 Wn.2d 476, 484, 824 P.2d 483 (1992), which addresses the issue of social host liability for serving alcohol to a minor who is then injured or killed. In *Hansen*, this court noted that RCW 5.40.060 may bar a minor from receiving damages from a social host if a trier of fact finds the minor more than 50 percent at fault. *Hansen*, 118 Wn.2d at 484.

*Hansen* is distinguishable, however. In that case, 15-year-old Keith Hansen wandered away from his campsite while intoxicated and fell into a lake where he drowned. *See Hansen*, 118 Wn.2d at 478-79. Arguably Hansen caused *both* the underlying accident or occurrence and his resulting death by his action of falling into the lake. In this case, by contrast, Geschwind did not cause the underlying accident or occurrence of crashing the truck into a telephone pole. That occurrence was caused by Flanagan's tortious conduct.

Narrowly construing RCW 5.40.060 to effectuate this legislative intent also harmonizes this statute with other portions of the 1986 tort reform act, of which RCW 5.40.060 is only one part. Laws of 1986, ch. 305, § 100 *et seq.* In interpreting a statute, the court must construe the act as a whole. *State v. S.P.*, 110 Wn.2d 886, 890, 756 P.2d 1315 (1988). Every provision must be viewed in relation to other provisions of the act and harmonized if at all possible to insure proper construction. *State v. S.P.*, 110 Wn.2d at 890; *see Neher*, 112 Wn.2d at 352. The Legislature's overarching goal of the tort reform act is to reduce costs while "assuring that adequate and appropriate compensation for persons injured through the fault of others is available". Laws of 1986, ch. 305, § 100. The majority's expansive reading of RCW 5.40.060 conflicts with this legislative intent by immunizing otherwise tortious conduct.

The majority's reading also conflicts with our state's contributory fault system. *See* RCW 4.22. In adopting comparative fault, the Legislature declared that a plaintiff's contributory negligence diminishes proportionately the damages awarded for the tortious conduct of another, but *does not bar recovery altogether*. RCW 4.22.005. However, the majority's interpretation of RCW 5.40.060 does just that by barring a tort victim from receiving any compensation whatsoever for his or her injuries caused by an intoxicated driver, even damages reduced on account of his or her own contributory negligence. In contrast, holding RCW 5.40.060 allows recovery by a passive passenger who did not cause the occurrence better harmonizes this statute with RCW 4.22.005. Just as important, this interpretation would not encourage intoxication or reward plaintiffs for failing to take due care for their own protection. Rather, the principles of comparative fault would still operate to reduce damages for the intoxicated, but passive, plaintiff who was contributorily negligent, but did not cause the tortious event itself. In this case, the jury did just that by assigning liability to both Geschwind and Flanagan under the State's comparative fault statute.

852

In conclusion, I would hold RCW 5.40.060 does not apply to intoxicated but passive passengers in a vehicle, who were contributorily negligent for their intoxication but did not cause the tortious event or occurrence which resulted in their injuries or death. Geschwind should be entitled to recover damages in accordance with the jury verdict that 30 percent of his injuries resulted from Flanagan's negligent tortious conduct.

UTTER and SMITH, JJ., concur with JOHNSON, J.