Larry W. **RICHARDSON**, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

No. CY–92–3137–JBH.

United States District Court, E.D. Washington.

Oct. 13, 1993.

Terry P. Abeyta, Yakima, WA, for plaintiff.

Robert S. Linnell, Yakima, WA, for defendant.

## OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

HOVIS, United States Magistrate Judge.

This matter was tried to the court without a jury over the period from September 21, 1993 to September 23, 1993. With the consent of the parties, the undersigned presided at the trial.

Plaintiff Larry W. Richardson appeared personally at the trial and through his attorney Terry P. Abeyta of ABEYTA NELSON P.C. Defendant United States of America appeared through its attorney of record Robert S. Linnell, Assistant United States Attorney.

The following witnesses were called and testified:

### Plaintiff's Witnesses

1. Trooper Ken Ward,
   Washington State Patrol
2. Larry J. Stadler,
   Accident Reconstructionist
3. K.F. Aboulhosn, M.D.
4. Larry W. Richardson,
   Plaintiff

### Defendant's Witnesses

1. Jeffrey E. Blasko
2. Michael E. Hlastala, Ph.D.
3. Ralph E. Duncan,
   Accident Reconstructionist

The following exhibits were offered and admitted into evidence:

### Plaintiff's Exhibits

1. Safe Driving Award from Associated Grocers, Inc.

2. Color photographs showing scene of collision, position of vehicles upon impact, and property damage to Mr. Richardson's 1965 Ford Ranchero pickup.

3. Police Traffic Collision Report prepared by the Washington State Patrol dated June 8, 1991, and pages from trooper's field notes.

4. Report from Washington State Toxicology Laboratory showing blood alcohol results of sample taken from Mr. Richardson on the date of injury.

5. Letter from Kittitas County Prosecuting Attorney's Office dated August 28, 1992 stating Mr. Richardson was never charged with any offense arising out of this collision.

6. Scale diagram of collision scene, with overlay, to illustrate Mr. Stadler's reconstruction of collision.

7. Two 5 × 7 inch color photographs taken at the scene of collision on May 21, 1993 showing width of lane dividers.

8. Vehicle Valuation/Settlement Report showing value of Mr. Richardson's vehicle of $2,465.80.

9. Ambulance report from City of Ellensburg Ambulance Service dated June 8, 1991.

10. Emergency room records from Kittitas Valley Community Hospital dated June 8, 1991 (edited to delete hearsay information as to collision and blood alcohol results).

11. Anatomical illustration showing the areas of tears in the mesentery root and mid-portion of the transverse colon suffered by Mr. Richardson.

12. Hospital records from Yakima Valley Memorial Hospital covering the 11-day period of inpatient hospitalization from June 8, 1991 through June 19, 1991 (edited to delete hearsay information as to collision).

13. Chart notes from Barry D. Bernfeld, M.D., covering the period from July 3, 1991 through August 5, 1991.

14. One 5 × 5 inch color photograph taken in December 1991 showing the scars and disfigurement to Mr. Richardson's face.

15. One 5 × 7 inch color photograph taken by K.F. Aboulhosn, M.D., just before surgery in February 1992 showing the scars over the right side of Mr. Richardson's face and nose.

16. Medical report from Dr. Aboulhosn dated August 28, 1992.

17. Four 5 × 7 inch color photographs taken on May 18, 1992 showing scarring to the forehead, both temple areas, left and right eyebrows and upper eyelids, nose, and left cheek.

18. One 5 × 7 inch color photograph taken on May 18, 1992 showing 12-inch scar to abdomen.

19. Three 5 × 7 inch color photographs taken shortly before trial to illustrate current appearance of scars to face and abdomen.

20. Summary and copies of past treatment expenses totaling $39,302.74.

21. Letter from Associated Grocers, Inc. dated June 19, 1992 verifying Mr. Richardson's past wage loss of $6,545.60 covering the period from June 8, 1991 through August 10, 1991.

22. Pay stub showing Mr. Richardson's rate of pay as of September 4, 1993 of $16.99 per hour.

23. Letters from Associated Grocers, Inc. dated September 21, 1992 and July 18, 1993 documenting an additional 80 hours of time loss for Mr. Richardson following the second scar revision surgery over the period from February 2, 1992 through February 15, 1992 in the amount of $1,273.60.

24. Mr. Blasko's diagram of collision scene from deposition.

25. Three photographs of skid marks.

26. Facial drawing showing placement of lacerations.

### Defendant's Exhibits

101. Kittitas Community Hospital laboratory report of Nancy Stubbles dated June 8, 1991 showing blood alcohol of 0.14.

102. Washington State Patrol Trooper Evans' report, acknowledgment of delivery, transfer-disposition of report, request for analysis, and State Toxicology Laboratory report showing completion date of June 12, 1991 by Egle Weiss showing blood alcohol of 0.08.

103. Other charts, photos, etc. utilized by Dr. Hlastala and Ralph E. Duncan in the course of their respective testimony.

104. Information used by Dr. Hlastala to make calculations.

106. Chart drawn in court by Dr. Hlastala for clarification.

### OPINION

The court notes, in making a determination regarding the June 8, 1991 accident, the sparse credible eyewitness testimony before it. Mr. Richardson's testimony on the amount of beer he drank is much less than the much larger amount that the evidence shows he consumed. Richardson's testimony on his limited consumption of alcohol severely damages his credibility. It is a well established rule of probability that if one is not truthful about a material issue, you can be reasonably assured that he will repeat this performance if it suits his interest. This fabrication, together with the obvious limitations on Richardson's ability to observe and remember caused by his alcohol consumption, and the residual of the trauma he experienced June 8, 1991, coupled with Mr. Richardson's self interest, does not allow this trier of fact to use any contested portion of Mr. Richardson's testimony to carry plaintiff's case over the preponderance-of-the-evidence hurdle.

■ Each side has presented an accident reconstructionist to aid its position.[1] Evaluation of testimony from each reconstructionist was easy: it did not assist the court. Not surprisingly, these reconstructionists reached divergent conclusions. When computations are based on opinions with no fixed factors, conclusions reached are purely opinion driven. Each reconstructionist was hampered by the lack of an exact on-the-scene measure-

---

1. The testimony of each accident reconstructionist was presented without objection. The court considered the weight of this testimony based on the guidance contained in the majority opinion in *Daubert v. Merrell–Dow,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

ment of the skid marks.[2] You can give the techniques used to determine these established factors any fancy name you want and one witness may be more experienced or able than the other, but the determination of the length of the skid marks by each reconstructionist is opinion produced and each opinion is not even close to the other opinion. Opinion regarding length of skid marks of both vehicles is critical to the analysis of each reconstructionist. Also, each reconstructionist, in reaching his conclusion regarding speed and reaction time, must apportion forces of impact not only on opinion-produced skid marks but also on his opinion regarding damage to each vehicle. The extent of damage to the vehicles is controlled not only by the respective weight of the vehicles but also on other, intangible factors. Some of these intangible factors are the resistance each vehicle has to damage and the condition and inflation of each vehicle's tires, and the type and condition of the roadway. While the reconstruction testimony furnished by each party might have satisfied the *Frye* test, basing an opinion on opinion and on unfound intangibles is not such scientific, technical or other specialized knowledge that can assist this trier of fact in determining a fact in issue. *See: Daubert v. Merrell–Dow, supra,* at IIB. This does not mean that testimony about the number of feet per second traveled at a certain speed and other like testimony was not of assistance in evaluating eyewitness testimony.

There was a credible eyewitness to the accident: Jeffrey E. Blasko, driver of the National Guard's 2½ ton truck.[3] The lapse of time and the absence of personal interest may have limited the clarity and consistency of Mr. Blasko's testimony, but his testimony was credible. He saw Mr. Richardson's vehicle traversing Desmond Way at its intersection with Business 90[4], or before, and observed it as it continued towards him in the northbound lane. June 8, 1991 was a clear day and there was good visibility at the accident scene. When Richardson's vehicle was between 353–450 feet away[5], Blasko's National Guard truck, which was following the lead vehicle of the 19–to–25 vehicle convoy, began to "enter traffic" by crossing the fog line on Donworth Way (a private driveway) and moving into the northbound lane of Desmond Way. There was previous movement in this National Guard convoy which could have and should have been observed by other vehicles. The first vehicle in this convoy had already crossed the northbound lane on Desmond Way and was proceeding south in the southbound lane and the National Guard truck driven by Mr. Blasko had moved five feet before crossing the fog line. The National Guard truck covered the 18 feet after crossing the fog line into the northbound lane and the five feet before entering the northbound lane before it was struck by the Richardson vehicle. The damage to the Richardson vehicle was on its front end— mainly to the left. The damage to the National Guard truck was back from the front end and near the driver's door. At the point of impact, the National Guard truck blocked the entire northbound lane. As the Richard-

2. The only on-the-scene measurement was by Jeffrey Blasko, the driver of the National Guard truck. However, his 30–foot measurement of the skid marks from the plaintiff's vehicle was by pacing i.e. "ten paces." Paces vary. For example, ten paces for me is approximately 22 feet. Mr. Blasko is taller than I and probably has a longer pace. But without evidence showing the length of his normal pace, I cannot classify Mr. Blasko's at-the-scene measurement as exact. A three-foot pace is a long pace.

3. The lack of other eyewitnesses was not explained. It is difficult to believe that an effort to find and produce such witnesses from persons at the scene would not be successful. The investigating trooper lists one eyewitness and his address.

As early as it was practical to do so, this court advised of reluctance to determine facts from reconstruction testimony rather than eyewitness testimony. Judge Weinstein has explained: "Expert testimony can be both powerful and quite misleading because of the difficulty in evaluating it." See: *Daubert, supra,* at folio 28 or Weinstein, Rule 702 of the Federal Rules of Evidence is sound; It should not be amended, 138 F.R.D. 631, 632 (1991). The undersigned has a like empirical reservation.

4. The four-way stop is located at this point.

5. Mr. Blasko's direct testimony specified R–3 on Exhibit 24 which is 450 feet away. State Patrol Trooper Wade apparently took a statement from Blasko placing the position of Richardson's vehicle at 353 feet away. Exhibit 3.

son vehicle approached this point of impact, Blasko could see that Richardson was not looking northerly on Desmond Way but had turned his head and was looking into the parking lots adjoining the roadway.[6] Plaintiff's reconstructionist testified that at 40 miles per hour it would have taken 71 feet for a reasonable person to react and stop. Eyewitness evidence shows that Mr. Richardson was approximately 50 feet from the National Guard truck when he returned his attention to see the blocked roadway. Given the circumstances of the convoy line-up, the first vehicle already crossing, and the obvious slowness and visibility of a large 2½ ton truck and trailer crossing to a center line, this court finds a reasonable person exercising reasonable care would realize at least 200 feet and probably 353 feet before the point of impact that the National Guard truck was not going to yield the right of way.

▮ The preponderance of the evidence shows and this court finds that both Mr. Richardson and Mr. Blasko violated statutory duties in the operation of the motor vehicles that they were driving on June 8, 1991. Mr. Blasko violated RCW 46.61.205, which provides:

> The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right of way to all vehicles lawfully approaching on said highway.

Mr. Richardson violated RCW 5.40.060, which provides:

> It is a complete defense to an action for damages for personal injury or wrongful death that the person injured or killed was under the influence of intoxicating liquor or any drug at the time of the occurrence causing the injury or death and that such condition was a proximate cause of the

injury or death and the trier of fact finds such person to have been more than fifty percent at fault. The standard for determining whether a person was under the influence of intoxicating liquor or drugs shall be the same standard established for criminal convictions under RCW 46.61.502, and evidence that a person was under the influence of intoxicating liquor or drugs under the standard established by RCW 46.61.502 shall be conclusive proof that such person was under the influence of intoxicating liquor or drugs.

In 1986, the Washington State Legislature changed the violation of statutory duty standard from negligence per se to evidence of negligence. This eliminated the strict liability character of most violations of statutory duty under the then negligence per se rule.[7]

**RCWA 5.40.050 Breach of duty—Evidence of negligence—Negligence per se**

A breach of a duty imposed by statute, ordinance, or administrative rule shall not be considered negligence per se, but may be considered by the trier of fact as evidence of negligence; however, any breach of duty as provided by statute, ordinance, or administrative rule relating to electrical fire safety, the use of smoke alarms, or driving while under the influence of intoxicating liquor or any drug, shall be considered negligence per se.

RCW 5.40.050

In *Hansen v. Friend,* ("*Hansen*"), 118 Wash.2d 476, 824 P.2d 483 (1992) the Washington Supreme Court adopted the *Restatement (Second) of Torts'* four-part test to determine when a statute may be used to define a reasonable person's standard of conduct.[8] Under the *Restatement,* a statute may define a duty of care if that statute: (1) protects a class of persons (2) against inva-

---

6. There is no disagreement that Plaintiff Richardson was looking away from the traveled portion of Desmond Way and did not look back until it was too late to avoid the accident. The question of whether a reasonable person exercising reasonable care would realize that the driver of the National Guard truck was not going to yield the right of way in time to avoid the accident, given reasonable reaction time, remains. It is from and after this point that a reasonable person's hypothetical conduct is compared with Mr. Richardson's conduct. *Whitchurch v. McBride,* 63 Wash.App. 272, 276–77, 818 P.2d 622 (1991).

7. Driving while under the influence is excluded from this statutory change and driving while under the influence remains negligence per se.

8. *Id.* at 479–80, 824 P.2d at 485 (citing *Young v. Caravan Corp.,* 99 Wash.2d 655, 659–60, 663 P.2d 834, 837 (1983)). *See also: Yurkovich v.*

sion of a particular interest (3) which results in a specific kind of harm (4) through a particular hazard.[9] Only where each of these factors is satisfied can a court use a statute as a basis for defining conduct.

Even though it is agreed that RCW 46.61.205 (failure to yield the right of way) meets the four-part test, this court after considering each test so holds. There is no need to determine if RCW 5.40.060 meets the four-part test because driving under the influence is negligence per se. *Geschwind v. Flanagan* ("*Geschwind*"), 121 Wash.2d 833, 854 P.2d 1061 (1993).

Plaintiff Richardson also violated the common law duty of maintaining a proper lookout. As a favored driver, Richardson could justifiably expect to have the right of way until he reaches the point where a reasonable person exercising reasonable care would realize that the disfavored driver is not going to yield. *Whitchurch v. McBride* ("*Whitchurch*"), 63 Wash.App. 272, 274, 818 P.2d 622 (2nd Div.1991). Such a comparison must credit the favored driver with a reasonable reaction time. This court finds that a reasonable person exercising reasonable care would have realized at least 200 feet away that the disfavored driver was not going to yield and therefore would have had time to react and to stop well before the collision. Mr. Richardson, failing to maintain a proper look out, did not have this time.

To establish a claim of negligence, a party must show not only the existence of a such a duty, but a breach of this duty, a resulting injury and causation—that the breach caused the injury. This causation has two elements: cause in fact and legal (proximate cause). *Whitchurch, supra,* at 274, 818 P.2d 622. A cause in fact is one without which the accident would not have happened. *Id.* If Mr. Blasko, driver of the National Guard truck, had yielded the right of way, the truck would not have obstructed the public highway. In the absence of a superseding cause, even with an intervening cause, this failure to yield the right of way is a proximate cause of the injury to Mr. Richardson and his vehicle. Mr. Richardson's negligence did not supersede the negligence of Mr. Blasko.

In 1981, the State of Washington adopted contributory fault as a method of apportioning damages as between a negligent plaintiff and a negligent defendant. *Geschwind, supra,* 121 Wash.2d at 837, 854 P.2d 1061. The Washington State Legislature defined "fault" as including "unreasonable assumption of risk and unreasonable failure to avoid an injury," [*id.*], as well as "acts or omissions that are in any measure negligent or reckless to the person or property of the actor or others." RCW 4.22.015. Where one drives under the influence of alcohol his recovery may be limited by the finding of contributory negligence. *Hansen* and *Geschwind, supra.* The apportionment of damages will be based on the apportionment of fault. Indeed, if the fault of the driver under the influence is found to be more than 50 percent and this negligence is a proximate cause of the injury, recovery is prohibited. *Geschwind, supra,* and RCW 5.40.060.

The evidence is clear that the alcohol consumption and the retention of alcohol in Mr. Richardson is a cause in fact of the injury to him. He did not see what was clearly there to be seen. Nothing but alcohol hampered his vision. His judgment was also hampered. Even if he saw the movement that would later block the highway, he did not attempt to even slow his vehicle. A driver exercising reasonable care would not have driven away from the Pomona Tavern after he consumed the amount of beer that Mr. Richardson consumed. The odds were that Mr. Richardson, as he drove away from the Pomona Tavern, was an accident going some place to happen. If Mr. Richardson was able to exercise proper judgment, he would not have gotten on the interstate highway and certainly would not have taken the back road to get to Seattle or Cle Elum. The only reason that this trier of fact could imagine for Mr. Richardson's selection of route would be to avoid observation by the Washington State Patrol. This trier of fact will not engage in any speculation about why

*Rose,* 68 Wash.App. 643, 647, 847 P.2d 925 (1st Div.1993).

9. *Restatement (Second) of Torts,* at 286 (1965).

Mr. Richardson selected this route but the result is that it placed him in an area where his lack of judgment and response would be a cause of his injuries.

Driving by truck stops can expose one to danger. In driving by truck stops one soon learns that truck drivers will often pull out into traffic even though it is obvious that other drivers will have to slow or stop to avoid a collision. Plaintiff's attorney certainly recognizes this in his statements about "might being right" and Mr. Richardson, a truck driver with eight years experience, should also agree. These trucks move so slowly and have such length that if they were to observe the right of way they would spend a large amount of their time waiting for traffic to clear. It is no excuse that truck drivers do this. If this convoy waited until the roadway was clear both ways, as a practical matter, it would no longer be a convoy or would be one stretching for miles. This understandable and negligent practice is also dangerous, especially when someone under the influence like Mr. Richardson arrives at the scene. Considering the amount of alcohol in Mr. Richardson's blood (i.e. 0.135 blood alcohol content) and his testimony that his drinking habits were light to moderate, he is lucky that he saw the truck in time to attempt to stop. This "accident going some place to happen" found ready participation in Mr. Blasko's failure to yield the right of way. Mr. Richardson's experience as a truck driver, considering his condition on that day, possibly saved him from more serious injuries.

■ The drivers of both vehicles were negligent and their negligence proximately caused the injuries herein. "In all actions involving fault of more than one entity, the trier of fact *shall* determine the percentage of the total fault which is attributable to each entity which caused the claimant's damages, *including the claimant* or person suffering personal injury or property damage, ..." (italics the Supreme Court's), *Geschwind* at 839, 854 P.2d 1061. The fault of both drivers is found to be equal and plaintiff's recovery shall be reduced by 50 percent of the amount determined by this court for special and general damages.

■ A word or two about these damages is appropriate. When it comes to life expectancy, this court believes that it has discretion on its own motion to use life expectancy tables and, without objection, will use the information that plaintiff's counsel has submitted, i.e. 32.26 years. Counsel for defendant has the opportunity should he wish to exercise it to be heard as to the propriety of taking judicial notice and the tenor or accuracy of the matter noted. *See* Rule 201, Federal Rules of Evidence.

In relevant part, the Federal Tort Claims Act provides, with several exceptions, that the United States shall be liable for compensatory damages in the same manner and to the same extent as a private individual under like circumstances. 28 U.S.C. § 2674. The damage law of the State of Washington will guide this court's determination. *Shaw v. United States*, ("*Shaw*"), 741 F.2d 1202 (9th Cir.1984). The undersigned has used *Shaw* as a map in the application of damage law of the State of Washington by a district court. Given the lack of evidence, this court could not use *Shaw* on present worth and the amount of applicable deduction for income tax. When this was called to the attention of counsel, they responded by stipulating that in computing loss of wages, the court could consider a Federal Income Tax reduction of 20% and a discount rate of 0% as regards reducing damages to be awarded for future recovery or expense.

The court here notes that in considering the amount of damages to be awarded for scars, it considered the location of the scars and Mr. Richardson's age, sex, appearance, and marital status. *See Ma v. Russell*, 71 Wash.2d 657, 430 P.2d 518 (1967).

The foregoing opinion shall be considered a part of the findings of fact and conclusions of law in this matter pursuant to Rule 52, Federal Rules of Civil Procedure.

### FINDINGS OF FACT

1. On June 8, 1991 at approximately 4:50 p.m., Mr. Richardson's vehicle collided with a National Guard truck on Desmond Way in the vicinity of Ellensburg, Washington.

2. Jeffrey E. Blasko, driver of the National Guard truck, was employed by the United States of America and was acting within the scope of his employment at the time this collision occurred. Mr. Blasko was at said time and place the operator of a fully loaded six-wheel Army truck which was towing a fully loaded 1-½ ton trailer and was proceeding in a westerly direction from a truck stop parking area onto Desmond Way preparatory to proceeding in a southerly direction on Desmond Way. The vehicle operated by Mr. Blasko was the second of approximately 19–to–25 military vehicles traveling in a convoy from the Western Washington area to the Yakima Firing Center via Interstate Highway 90, and had just completed a rest stop.

3. Mr. Richardson was proceeding northbound on Desmond Way when the collision occurred. The speed limit on Desmond Way at the location where the collision occurred is 40 m.p.h.

4. Mr. Blasko was driving a National Guard truck pulling a trailer. The fully-loaded 2-½ ton truck and its trailer weighed approximately nine tons and was approximately 35 feet in length.

5. At the point of impact, the National Guard truck completely blocked the northbound lane of travel on Desmond Way.

6. As he traveled northbound on Desmond Way, Mr. Richardson observed the National Guard truck involved in this collision stopped just south of the fog line on Desmond Way. Mr. Richardson then looked to his right. When Mr. Richardson looked forward again, he observed the truck blocking his lane of travel and attempted to take evasive action.

7. Prior to the collision, Mr. Richardson applied his brakes in an attempt to avoid colliding with the National Guard truck.

8. Mr. Blasko observed Mr. Richardson's vehicle approaching at a "high" rate of speed and Mr. Richardson turning his head away to look to his right as Mr. Blasko was pulling out from the parking lot into the road.

9. Mr. Richardson, after entering upon Desmond Way, accelerated and did not decrease his speed until he was approximately 50 feet away from the National Guard truck and his vehicle struck the front left portion of the Army truck being operated by Mr. Blasko.

10. Mr. Richardson, at the time of the collision, was under the influence of intoxicating liquor and had a blood alcohol content of 0.135.

11. Mr. Richardson did not observe that the Army truck was then occupying the northerly lane of Desmond Way until he was unable to avoid the accident.

12. Had Mr. Richardson not been intoxicated and had he been attentive to the roadway before him, he could have stopped his vehicle well short of the point of impact.

13. The force of the impact of Mr. Richardson's vehicle striking the front left portion of the Army truck caused the front of the Army truck to be moved laterally in a northerly direction approximately two-and-one-half feet, as evidenced by tire marks.

14. The collision occurred on a clear, dry day upon an essentially level stretch of roadway and with no structures or other impediments to obstruct the vision of either driver.

15. Prior to this collision, Mr. Richardson was in excellent physical health and condition. He had no significant scarring anywhere on his body, including his face and abdomen.

16. Mr. Richardson suffered multiple injuries in this collision:

a. Severe facial lacerations, including to his forehead, cheeks, nose, eyebrows, and eyelids, resulting in permanent scarring and disfigurement;

b. Intra-abdominal bleeding of enteric artery with tear of mesentery transverse colon and intra-abdominal hematoma;

c. Open fracture of nasal bone;

d. Residual scarring to stomach and abdomen area from emergency laparotomy surgery;

e. Atelectasis (collection of fluid in right lung);

f. Laceration to dorsum of right wrist; and

g. Multiple abrasions and contusions including chest, right forearm, and right wrist areas.

17. Mr. Richardson underwent emergency surgery to repair extensive facial lacerations and a fractured nose, an emergency laparotomy, and a scar revision surgery. Mr. Richardson is expected to undergo at least two more scar revision surgeries with dermabrasion of the scar regions. Assuming a successful outcome of these additional surgeries, Mr. Richardson will be left with permanent residual scarring on his face to his forehead, both temple areas, left and right eyebrows, upper eyelid areas, nose, and left cheek. In addition, he will be left with a 12-inch long scar over his abdomen.

18. Treatment of Mr. Richardson's injuries has required eleven days of inpatient hospitalization and follow-up with his physicians. Mr. Richardson has incurred treatment expenses totaling $39,302.74 as of March 12, 1992 for treatment of injuries received from this collision. The reasonable value of future scar revision surgeries is $15,000.

19. Mr. Richardson was unable to work from June 8, 1991 through August 10, 1991. Over that period, Mr. Richardson missed a total of 280 hours at $16.295 per hour, and 120 hours at $16.525 per hour, for an initial wage loss of $6,545.60. This wage loss is reduced by twenty percent for income tax to the amount of $5,236.48.

20. Following the second scar revision surgery, Mr. Richardson was unable to work from February 3, 1992 through February 17, 1992. Over that period, Mr. Richardson missed a total of 80 hours at $15.92 per hour for an additional wage loss of $1,273.60. This wage loss is reduced by twenty percent for income tax to the amount of $1,018.88.

21. Mr. Richardson will incur additional wage loss following the additional scar revision surgeries. At his current rate of pay of $16.99 per hour and based on Mr. Richardson missing an additional 160 hours for both surgeries, Mr. Richardson's future wage loss will be $2,718.40. This wage loss is reduced by twenty percent for income tax to the amount of $2,174.72.

22. Mr. Richardson's 1965 Ford Ranchero pickup was destroyed in the collision. This vehicle has a fair market value of $2,465.80.

23. As a 42-year-old male, Mr. Richardson has a future life expectancy of 32.26 years.

24. Mr. Richardson's administrative Claim for Damage, Injury, or Death under the Federal Tort Claims Act was properly filed and was rejected.

25. Mr. Richardson has returned to full time employment. He is fully ambulatory and has no apparent loss of function. Mr. Richardson has some scarring. The facial scars are only noticeable on close examination and should be substantially reduced by the planned future treatment. The scar on his stomach appears from exhibit 18 to be more visible. Mr. Richardson's scarring produces no loss of function and little or no effect on activities of daily living and has not produced behavioral changes. On the day of the accident and in his treatment and recovery, Mr. Richardson experienced acute pain but has not been burdened by a continuing chronic pain. Mr. Richardson's pain may have been understated. He had to hurt when, unbuckled, he was thrown about during the collision. Having his body impacted by extensive surgical treatment also caused pain. However, it does not appear that his pain had a serious substantial impact on his way of life or produced behavioral changes. Up to the date of trial and thereafter, Mr. Richardson has been generally damaged in the amount of $70,000.

The court having made the above Findings of Fact, hereby makes the following:

### CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties in this lawsuit by virtue of 28 U.S.C. §§ 2674 and 1346(b). The Eastern District of Washington is the appropriate venue for this lawsuit. Pursuant to 28 U.S.C. § 636(c), the undersigned has jurisdiction to determine this matter.

2. On June 8, 1991, plaintiff Larry W. Richardson and defendant's agent Jeffrey Blasko, were negligent in the operation of

their motor vehicles. The respective negligence and fault by both drivers was a proximate cause of the injuries to the person and property of the plaintiff. This negligence and fault causing injuries to the person and property of the plaintiff was equal. Therefore, plaintiff's recovery shall be reduced by fifty (50%) percent.

3. Plaintiff Larry W. Richardson is awarded a judgment against the defendant in the total amount of $67,599.31 which is based on the calculated reduced damages as follows:

   a. $19,651.37 for past treatment expense.

   b. $7,500.00 for future treatment expense.

   c. $3,127.68 for past wage loss.

   d. $1,087.36 for future wage loss.

   e. $1,232.90 for loss of vehicle.

   f. $35,000.00 for general damages.

**IT IS ORDERED,** that plaintiff is awarded judgment against defendant in the sum of $67,599.31. The Clerk of the court shall enter judgment accordingly and forward copies of the judgment and this opinion to counsel.

**IT IS FURTHER ORDERED,** that the Clerk shall release the exhibits to the party introducing same. The parties shall retain their exhibits for submission to the Court of Appeals for the Ninth Circuit, through the Clerk's office, should any review be sought.